UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA     : Criminal No. 3:18-cr-00024-KRG

                     :

          v.                  :

                     :

JOHN T. TERRY (aka "Tyree Terry"),   :

        Defendant      :

### DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

HERE COMES, the Defendant, John T. Terry (hereafter "Mr. Terry"), by his attorney, Sandra Thompson, Esq., and respectfully moves the Court to suppress all physical evidence seized and statements made on April 4, 2018 during and after a traffic stop of a 2010 Ford Taurus driven by Gerald Terry (hereinafter referred to as "driver") in which Mr. Terry was a passenger in Somerset County, Pennsylvania. During this stop, both occupants were seized and the vehicle was searched by Pennsylvania State Trooper Ryan L. Marmol. Both the seizure and the search were in violation of the Fourth Amendment to the United States Constitution. Accordingly, any evidence recovered from the unlawful search and seizure of Mr. Terry should be suppressed.

Mr. Terry requests a hearing and believes that at such hearing a proper record in this case would indicate the following factual predicate for his claims for Pre-Trial relief:

### I.     FACTUAL BACKGROUND

1. On November 7, 2018, Mr. Terry was arraigned on one count possession with intent to distribute cocaine with methamphetamine, in violation of 21 U.S.C.. §§ 84I(a)(l), 841(b)(l)(A)(viii) and 841(b)(l)(B)(ii)(II); one count of Unlawful possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(l); and Unlawful possession of a

firearm in furtherance of a drug trafficking crime, 18 U.S.C. §§ 924(c)(l)(A)(i) and 924(c)(1)(C)(i).

2.  Initially, Mr. Terry was arrested on April 4, 2018 and charged by Somerset County District Attorney's office.

3.  Mr. Terry filed a suppression motion in state court, but he was taken into federal custody on November 7, 2018 at the time of his suppression hearing in state court and before the hearing could be held. The United States Attorney's Office for the Western District of Pennsylvania began prosecuting the case.

4.  On November 8, 2018, a pretrial order was issued.

5.  On November 14, 2018, Mr. Terry was granted pretrial release with conditions, which was stayed pending the Government's anticipated appeal, as such Mr. Terry remains incarcerated at Cambria County prison.

6.  This case arose from a traffic stop on April 4, 2018 by Trooper Ryan Marmol of the Pennsylvania State Police, SP Shield Section, hereinafter referred to as "Trooper Marmol".

7.  Trooper Marmol traveled in the left lane at a high rate of speed, passing vehicles in the right lane, on I-76 westbound near mile marker 118.4 (or 119) in Stonecreek Township, Somerset County.

8. As Trooper Marmol speedily approached behind "Mr. Terry's vehicle"[1] also in the left lane, the driver activated his right turn signal and switched into the right lane.[2]

9. Immediately after Mr. Terry's vehicle switched into the right lane, Trooper Marmol also switched lanes behind them and executed a traffic stop.

10. According to the audio/video recording, Trooper Marmol approached the stopped vehicle from the passenger side and advised the driver the reason for the stop was driving too close to the vehicle in front due to his merge into the right lane.

11. This stop occurred around 2:49pm. See Defendant's Exhibit A (1)[3].

12. Trooper Marmol requested and obtained the vehicle registration, the identifications of both the driver and Mr. Terry, and the toll ticket.

13. Trooper Marmol confirmed neither occupant owned the vehicle, a 2010 red Ford Taurus with PA registration JXN3599, which was registered to Kelly Roysters.

14. Mr. Terry was granted the right to use the vehicle and had a reasonable, legitimate and subjective expectation of privacy in the vehicle.

15. While in possession of their identification and toll ticket, detaining the driver and Mr. Terry without reading Miranda, Trooper Marmol questioned the occupants about their travels.

3.

---

[1] "Mr. Terry's vehicle" is cited herein for ease of reference. Mr. Terry did not own the vehicle, was not the driver, but was the front seat passenger and had borrowed the vehicle.

[2] Trooper Marmol's vehicle was equipped with audio and/or video equipment and the Trooper wore a body microphone, which CD will be provided during any hearing on this motion.

[3] A true and correct copy of Trooper Marmol's police report, pages 3-6, which are attached hereto, incorporated herein, and is marked as "Exhibit A".

16. The driver responded that they were traveling to Pittsburgh from Philadelphia, because he was scheduled to speak at a N.A. (narcotics anonymous) meeting, which Trooper Marmol decided was an unbelievable reason for travel because of the distance.

17. The driver advised that the car belonged to his friend and/or friend's wife.

18. Trooper Marmol noted that Mr. Terry was not wearing socks.

19. Upon returning to his vehicle, Trooper Marmol called for back-up and performed a criminal history search on the driver, Mr. Terry, and the registered vehicle owner.

20. Pursuant to the criminal history check, Trooper Marmol found that the driver and registered owner had prior criminal history for drug offenses and were on supervision and found that Mr. Terry had prior criminal history for Robbery with a firearm.

21. Once a second Trooper arrived, about 20 minutes after the stop, the occupants were removed from the vehicle.

22. Trooper Marmol advised the driver that he knew of his criminal history and that the driver's previously provided identification and toll ticket would be given to the second Trooper and Trooper Marmol asked the driver if he could search the vehicle.  The driver nodded and/or said "yes".

23. While Trooper Marmol searched the interior of the vehicle several times and searched the trunk, the second Trooper stood with his hand on his firearm guarding the driver and Mr. Terry who stood in the cold in front of Trooper Marmol's vehicle.

24. After about 35 minutes from the stop, Trooper Marmol stated his suspicions of an after market compartment, then the driver and Mr. Terry were handcuffed and placed in the second Trooper's vehicle.

4.

25. Without obtaining a search warrant and without consent to expand his search to the internal body or mechanical compartments of the vehicle, using tools, Trooper Marmol searched the vehicle for another 55 minutes before the alleged hidden compartment was discovered and opened to find contraband of controlled substances and a firearm[4] .

26. The driver and Mr. Terry were then driven to the police station.

27. At the police station, after further questioning,  Mr. Terry advised that it was he who borrowed the vehicle, so Trooper Marmol noted that Mr. Terry said he was responsible for the vehicle.

## II.    GROUNDS FOR MOTION

28. Any and all evidence obtained as a result of the search and  seizure of the 2010 Ford Taurus must be suppressed for the reason that the stop of the vehicle was without probable cause/reasonable suspicion to believe that a motor vehicle offense had been committed. All evidence derived from the illegal stop of the 2010 Ford Taurus must be suppressed.

29. Any and all evidence obtained as a result of the search and  seizure of the 2010 Ford Taurus must be suppressed for the reason that the detention that occurred in this case was longer than necessary to effectuate the resolution of the alleged motor vehicle

5.

---

[4] A true and correct copy of the receipt inventory list is attached hereto, incorporated herein, and is marked as "Exhibit B".

violation(s) and was unsupported by reasonable suspicion to believe that an offense other than the alleged traffic violation(s) had occurred and was therefore illegal. All evidence derived from the illegal detention must be suppressed.

30. Any and all evidence obtained as a result of the search and seizure of the 2010 Ford Taurus must be suppressed for the reason that the driver's consent was not the result of a voluntary waiver of his or Mr. Terry's right to be free from unreasonable searches and seizures and was in violation of the Fourth and Fifth Amendments to the United States Constitution and all evidence derived therefrom must be suppressed.

31. To the extent the consent is found valid, it was limited to the interior and trunk of the vehicle and there was no valid consent to extend the search to the internal body of the vehicle by removing vehicle panels and mechanical compartments with tools. The wholesale search of the internal body of the vehicle for guns, drugs and money was beyond the scope of consent to search and all evidence obtained as a result must be suppressed as the search and seizure were in violation of the Fourth and Fifth Amendments to the United States Constitution.

32. The statements of the driver and Mr. Terry rendered to the police at the time of the stop must be suppressed for the reason that the statements were the fruits of the illegal stop, search and seizure as outlined herein, and, independently, because Trooper Marmol did not properly advise the driver or Mr. Terry of their <u>Miranda</u> rights and neither did render a proper waiver of <u>Miranda</u> rights before questioning ensued.

6.

33. The statements Mr. Terry rendered to the police later at the Police barracks must be suppressed for the reason that the statements were the fruits of the illegal stop, search, and seizure of the 2010 Ford Taurus.

34. In light of the foregoing, any and all evidence derived from the stop, search and seizure of the 2010 Ford Taurus by the Pennsylvania State Police on April 4, 2018, and all resulting statements must be suppressed as having been taken in violation of Mr. Terry's rights pursuant to the Fourth, Fifth and Sixth Amendments to the United States Constitution.

35. The Legal Argument/ Citation of Authority section below is incorporated herein by reference and further supports this Motion for Suppression of evidence.

WHEREFORE, it is respectfully submitted that all evidence the police seized in this case from Mr. Terry would be suppressed.


### III.   LEGAL ARGUMENT/CITATION OF AUTHORITIES

**A. The Traffic Stop of the Vehicle by Trooper Marmol was an Unlawful Search and Seizure in Violation of the 4th Amendment.**

Trooper Marmol lacked reasonable suspicion or probable cause that a traffic violation was committed, but instead executed the traffic stop under the pretext of performing a criminal investigation. As evidenced by the video, Trooper Marmol stated his reason for stopping the vehicle was that the driver was too close to the other vehicle when the driver switched lanes. A review of the totality of the circumstances, as required by United States v. Johnson, 592 F.3d 442, 448-49 (3rd Cir.2010), through the video shows that the officer traveled at a high rate of speed in the left lane passing other vehicles traveling in the right lane.  When the officer

7.

approached behind Mr. Terry's vehicle, it was driving in the left lane parallel to another vehicle in the right lane.  Mr. Terry's vehicle allowed the other vehicle in the right lane to pull ahead, activated his right turn signal, and switched lanes behind the vehicle, because of Trooper Marmol's speedy approach. Trooper Marmol immediately switched to the right lane as well behind Mr. Terry's vehicle and executed a traffic stop.

A routine traffic stop is constitutional when it is supported by reasonable suspicion of criminal activity. United States v. Johnson, 452 Fed.Appx. 219, 225 (3d Cir.2011) (*citing* United States v. Delfin-Colina, 464 F.3d 392, 397 (3rd Cir.2006)). For a traffic violation, the police must have probable cause to believe that a traffic violation has occurred. Brendlin v. California, 551 U.S. 249, 263 n. 7, 127 S.Ct. 2400, 168 L.Ed.2d 132 (2007). Trooper Marmol did not possess reasonable suspicion of criminal activity or probable cause of a traffic violation at the time of the stop.

When Trooper Marmol stopped the vehicle, he seized Mr. Terry illegally in violation of the 4th Amendment. United States v. Walker, 719 F.Supp.2d 586, 592 (W.D.Pa.2010)(finding when a vehicle is stopped, everyone in the vehicle, not just the driver, is seized((*citations omitted*); See Also Brendlin v. California, 551 U.S. 249, 251, 127 S.Ct. 2400, 168 L.Ed.2d 132 (2007). As an authorized borrower of the vehicle, Mr. Terry possessed a reasonable, legitimate, and subjective expectation of privacy in the vehicle. See, United States v. Baker, 221 F.3d 438, 442-443 (3d Cir. 2000)(*citations omitted*).

Trooper Marmol did not observe tint on the brake lights or mention it until after the stop, so this alleged violation cannot provide a legal justification for the stop. An officer executing a lawful traffic stop based on a violation of a traffic code must observe a traffic violation prior to

initiating the traffic stop. Ex post facto justifications are impermissible. United States v. Lewis, 672 F.3d 232, 237 (3d Cir.2012); *cf*. Delfin-Colina, 464 F.3d at 398. Additionally, the tint did not change the colors of the vehicle's lights to be a traffic violation.

Furthermore, Trooper Marmol seized Mr. Terry for 1 ½ hours before contraband was found. Trooper Marmol never terminated the traffic stop, maintaining their identification, the registration card, and the toll ticket during the entire encounter. Even if the stop for the traffic violation was reasonable, Mr. Terry was unreasonable seized as Trooper Marmol unnecessarily extended that time necessary to handle the traffic violation, the reason for the stop, so the traffic stop was dilatory. See, Rodriguez v. United States, 135 S.Ct. 1609, 191 L.Ed.2d 492 (2015)(finding it is not a de minimis violation of Defendant's rights and holding "a police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures). A seizure justified only by a police-observed traffic violation, therefore, 'become[s] unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission' of issuing a ticket for the violation." Id. at 1612, *quoting* Illinois v. Caballes, 543 U.S. 405, 407 (2005). The Supreme Court also found an officer may not perform checks that prolongs the stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual. Id. at 1615.  Trooper Marmol immediately began performing a criminal investigation, called for back-up, and performed background checks. While doing so, he kept the driver and Mr. Terry waiting in the vehicle for twenty (20) minutes until his back-up arrived. After his back-up arrived, Trooper Marmol continued the criminal investigation, never concluding the alleged traffic stop. Trooper Marmol requested to search 20

9.

minutes after the stop, searched for another 15 minutes, and under a hunch began searching by removing parts of the vehicle for another 55 minutes, totaling about 1 ½ hours. Mr. Terry was illegally seized.

Evidence obtained from an illegal search or seizure is subject to suppression under the fruit of the poisonous tree doctrine. Weeks v. United States, 232 U.S. 383, 398, 34 S.Ct. 341, 58 L.Ed. 652 (1914); Wong Sun v. United States, 371 U.S. 471, 487-88, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

**B. Trooper Marmol's Search Was Illegal As A Warrantless Search And Consent Was Invalid And Involuntary**

Trooper Marmol should have, but failed to, obtain a warrant to search the vehicle. When Trooper Marmol began searching, he lacked probable cause to seize and/or to search the vehicle. The automobile exception to the warrant requirement permits law enforcement to seize and search an automobile without a warrant if 'probable cause exists to believe it contains contraband.' United States v. Burton, 288 F.3d 91, 100 (3d Cir.2002) (*quoting* Pennsylvania v. Labron, 518 U.S. 938, 940, 116 S.Ct. 2485, 135 L.Ed.2d 1031 (1996)). " Probable cause exists when, viewing the totality of the circumstances, ' there is a fair probability that contraband or evidence of a crime will be found in a particular place.' " Gresh v. Godshall, 170 Fed.Appx. 217, 220 (3d Cir.2006) (*quoting* Illinois v. Gates, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)).  A search conducted without a warrant issued upon probable cause is " per se unreasonable ... subject only to a few specifically established and well-delineated exceptions." Schneckloth v. Bustamonte, 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973) (*quoting*

10.

Katz v. United States, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967)). " Valid and voluntary consent is an  exception to the requirements of both a warrant and probable cause. Id.; *See Also* United States v. Wilson, 413 F.3d 382, 388 (3d Cir.2005) (*quoting* United States v. Givan, 320 F.3d 452, 459 (3d Cir.2003)).

The driver did not take authority or responsibility for the car to give valid consent. He was not the person who borrowed the car. If the driver could consent to a search,  United States v. Morales, 861 F.2d 396, 399 (3d Cir.1988), the "consent" was not freely and voluntarily given. United States v. Price, 558 F.3d 270, 277 (3d Cir.2009)(*citations omitted*). The driver merely submitted to Trooper Marmol's show of authority. Whether consent to a search " was in fact 'voluntary' or was the product of duress or coercion ... is a question of fact to be determined from the totality of all the circumstances." Schneckloth, 412 U.S. at 227, 93 S.Ct. 2041. The critical factors comprising a totality of circumstances inquiry generally include: " the setting in which the consent was obtained, the parties' verbal and non-verbal actions, and the age, intelligence, and educational background of the consenting [party]." Wilson, 413 F.3d at 388 (quoting Givan, 320 F.3d at 459); *See Also* United States ex. rel. Harris v. Hendricks, 423 F.2d 1096, 1099 (3rd Cir.1970).

The driver remained in custody and detained while questioned by Trooper Marmol.  After having the driver wait about 20 minutes and the arrival of a second Trooper, Trooper Marmol removed the driver from the vehicle and informed him he knew of his criminal history, while the second Trooper stood by with his hand on his firearm. Trooper Marmol then asked the driver if he could search the vehicle to which the driver basically nodded yes, acquiescing to the

11.

Trooper's show of authority. Trooper Marmol searched the vehicle while the driver and Mr. Terry stood outside in the cold in front of Trooper Marmol's vehicle under guard by the second Trooper who continually had his hand on his firearm.

The driver was seized by means of physical force or a show of authority, his freedom of movement was restrained. See, United States v. Mendenhall, 446 U.S. 544, 553, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980).  There was never a consensual encounter requiring no reasonable suspicion or probable cause, because the officer never returned the license, registration, or toll ticket, and never told them they were free to go when he questioned the driver. Cf, United States v. Wilson, 413 F.3d 382, 386-87 (3rd Cir.2005)(*citations omitted*).  The test for existence of a ' show of authority' is an objective one: not whether the citizen perceived that he was being ordered to restrict his movement, but whether the officer's words and actions would have conveyed that to a reasonable person." California v. Hodari D., 499 U.S. 621, 628, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991). Ultimately, the relevant inquiry is whether, under the totality of the circumstances, " a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter ....' " United States v. Kim, 27 F.3d 947, 951 (3rd Cir.1994); S*ee Also* Wilson, 413 F.3d at 386-87.  Trooper Marmol's words and actions would not have conveyed to a reasonable person that he was free to decline the officers' requests or otherwise terminate the encounter when the officer refused to return the seized documents and toll ticket, had the driver waiting 20 minutes until a second Trooper arrived, ordered the driver out of the vehicle while the second Trooper stood nearby with his hand on his weapon, informed the driver he knew of his criminal history, all before asking to search the vehicle.  No reasonable person,

12.

like the driver, would feel free to decline the officers' requests or otherwise feel free to terminate the encounter. These facts are distinguished from United States v. Birt, 120 Fed.Appx. 424, 427 (3rd Cir.2005).

### C. The Scope of the Consent to Search was Exceeded Invalidating Any Consent

" When a warrantless search is authorized by voluntary consent, the extent of that search is limited to the terms of the consent." Birt, 120 Fed.Appx. at 428 (*citing* United States v. Kim, 27 F.3d 947, 956 (3rd Cir.1994) (*quoting* Florida v. Jimeno, 500 U.S. 248, 251, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991))). " The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of ' objective' reasonableness— what would the typical reasonable person have understood by the exchange between the officer and the suspect?" Jimeno, 500 U.S. at 251, 111 S.Ct. 1801. " The scope of a search is generally defined by its expressed object." Id.

A typical reasonable person in this driver's position, who did not own the vehicle and who had not borrowed the vehicle, would have considered the scope of the search as the wingspan search of the vehicle's interior and of the trunk.  No reasonable person in the driver's position would believe that the consent to search extended to the officer using tools to take apart parts of the vehicle. The officer continued to intimate that the encounter would be quick so that they could be on their way, as such the driver would not reasonably thought that the search would extend over an hour and the entire stop 1 ½ hours.

There are no facts to substantiate that the driver gave implied consent either. *See*, United States v. Tarburton, 610 F.Supp.2d 268, 276 (D.Del.2009) (*citing* United States v. Moreland, 437

13.

F.3d 424, 429 (4th Cir.2006), *overruled on other grounds by* <u>Rita v. United States</u>, 551 U.S. 338, 127 S.Ct. 2456, 168 L.Ed.2d 203 (2007) *as stated in* <u>United States v. Diosdado-Star</u>, 630 F.3d 359 (4th Cir.2011));

**D.  The Pre-Arrest And Post-Arrest Statements Made Pursuant To The Traffic Stop Must Be Suppressed In Violation Of The 5th, 6th,  And 14th Amendments**

In <u>Miranda v. Arizona</u>, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the Supreme Court " established certain procedural safeguards that require police to advise criminal suspects of their rights under the Fifth and Fourteenth Amendments before commencing custodial interrogation." <u>Duckworth v. Eagan</u>, 492 U.S. 195, 201, 109 S.Ct. 2875, 106 L.Ed.2d 166 (1989) (*citing* Miranda). The suspect " must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." <u>Miranda</u>, 384 U.S. at 479, 86 S.Ct. 1602. These rights include the right to have counsel appointed if the suspect is indigent. *See* <u>Miranda</u>, 384 U.S. at 473, 86 S.Ct. 1602. Unless such warnings are given, " no evidence obtained as a result of the interrogation can be used against him." <u>Id</u>.; S*ee* <u>Renda v. King</u>, 347 F.3d 550, 557 (3rd Cir.2003).  Miranda 's exclusionary rule is invoked when the statement is made during a custodial interrogation. *See* <u>Rhode Island v. Innis</u>, 446 U.S. 291, 300-01, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980).

As heretofore, stated, the driver and Mr. Terry remained detained by Trooper Marmol and unable to leave from the time of Trooper Marmol's first approach to the vehicle. Trooper

Marmol did not advise either the driver or Mr. Terry of their Miranda rights while subjecting them to questioning during their detention at the scene of the stop.  As such, Trooper Marmol violated Mr. Terry's (and the driver's) 5th, 6th, and 14th Amendment Constitutional rights. The violations of Mr. Terry's Consitutional rights were not cured by any reading of Miranda at the police barracks

.

## IV.    CONCLUSION

For the reasons set forth herein, it is respectfully submitted that after a hearing, Defendant's Motion to Suppress Evidence should be granted and all evidence obtained listed on the attached Defendant's Exhibit B, all statements, and any derivative evidence therefrom must be suppressed and excluded from trial.

.

DATED: November 28, 2018                    Respectfully Submitted:


s/ Sandra Thompson
Sandra Thompson, Esq. PA I.D. 84345
Law Office of Sandra Thompson, LLC
351 E. Princess St., P.O. Box 1901
York, PA 17405
Telephone/Fax: 215-987-3650
Email: sthompsonLLC@gmail.com


15.

## PROOF OF SERVICE

I, Sandra Thompson, Esq., do hereby certify that the Government was served with a true

and correct copy of the Defendant's Motion To Suppress Evidence pursuant to LCvR 5.6 by

electronic means to the extent and in the manner authorized by the Standing Order regarding

Electronic Case Filing Policies and Procedures and the ECF User Manual as follows:


Arnold P. Bernard, Jr., A.U.S. A

United States Attorney's Office
Suite 200 - Penn Traffic Building
319 Washington Street
Johnstown, PA 15901

Email: Arnold.bernard@usdoj.gov


DATED: November 28, 2018          Respectfully Submitted:


                                  s/ Sandra Thompson
                                  Sandra Thompson, Esq. PA I.D. 84345
                                  Law Office of Sandra Thompson, LLC
                                  351 E. Princess St., P.O. Box 1901
                                  York, PA 17405
                                  Telephone/Fax: 215-987-3650
                                  Email: sthompsonLLC@gmail.com