IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

_____

UNITED STATES OF AMERICA,
                    Plaintiff,

                                        Criminal Action
          vs                            No. 18-24
                                        (Day 5)
JOHN T. TERRY,
                    Defendant.


_____

          Transcript of Day Five Jury Trial/Bench Trial proceedings held on Friday, August 26, 2022, United States District Court, Johnstown, Pennsylvania, before the Honorable Kim R. Gibson, U.S. District Court Senior Judge.


APPEARANCES:

For the Government:            ARNOLD P. BERNARD, JR., Esq.
                               MAUREEN SHEEHAN-BALCHON, Esq.
                               U.S. Attorney's Office
                               319 Washington Street, Suite 200
                               Johnstown, PA  15901
                               arnold.bernard@usdoj.gov
                               Maureen.Sheehan-Balchon@usdoj.gov




For the Defendant:             SANDRA THOMPSON, Esq.
                               351 E. Princess Street
                               P.O. Box 1902
                               York, PA  17405
                               sthompsonLLC@gmail.com




Court Reporter:     Shirley Hall, RDR, CRR
                    U.S. Courthouse, Suite 204
                    Penn Traffic Building
                    319 Washington Street
                    Johnstown, PA  15901
                    shirleyhall_uscra@yahoo.com


Proceedings recorded by digital stenography; transcript produced by computer-aided transcription.

PROCEEDINGS

(In open court.)

THE COURT: Please be seated.

Good morning. Are the parties ready to proceed?

MS. THOMPSON: Good morning, Your Honor, yes.

MS. SHEEHAN-BALCHON: Yes, Your Honor.

THE COURT: All right. When we left yesterday and when we went into recess, Defendant had indicated that he wished to waive his right to jury trial on Counts 3 and 5. And we're ready to address that this morning if that's still what he wishes to do.

I do have a colloquy that I need to go through and need to get a waiver signed by Defendant that he wants to do that. And then, after that, we can discharge the jury and proceed if that's how you wish to proceed, Attorney Thompson.

MS. THOMPSON: Okay, Your Honor.

THE COURT: All right. Would you administer the oath to the Defendant for today's proceeding.

JOHN T. TERRY, the Defendant herein, having been first duly sworn, was examined and testified as follows.

THE COURT: All right.

Mr. Terry, is it your desire at this point, sir, to waive your right to jury trial?

THE DEFENDANT: Yes.

THE COURT: All right. Before I can consider that and

grant it, I need to ask you a few questions and to make sure that you understand what you're doing and that we have on the record that you understand what you're doing.

So to ensure that it's a valid waiver, first, the Court is informed that you desire to waive your right to jury trial with respect to Counts 3 and 5 of the first superseding indictment at Criminal No. 18-24.

Is that correct?

THE DEFENDANT:  Correct.

THE COURT:  Do you understand that you are entitled to a trial by jury on Counts 3 and 5?

THE DEFENDANT:  Yes.

THE COURT:  Do you understand that a jury trial means that you will be tried by a jury consisting of 12 people and that all of the jurors must agree on the verdict?

THE DEFENDANT:  Yes.

THE COURT:  Do you understand that if I approve your waiver of jury trial, the Court, meaning me, will try the case and determine your innocence or guilt?

THE DEFENDANT:  Yes.

THE COURT:  Attorney Thompson, have you fully discussed with the Defendant the advantages and disadvantages of a jury trial?

MS. THOMPSON:  Yes, Your Honor.

THE COURT:  Do you as his attorney have any doubt that

the Defendant is making a knowing and voluntary waiver of his right to jury trial?

MS. THOMPSON: No, Your Honor.

THE COURT: Mr. Terry, because you and Attorney Thompson have answered my questions appropriately, you may now sign and date the waiver of right to trial by jury that will be provided to you at this time.

And I'll hand it to Mr. Keys and he will bring it down to you.

And I will have questions for the United States also.

(Waiver signed by the Defendant.)

THE COURT: There's also a portion on there, Attorney Thompson, for you to sign.

(Waiver signed by Defendant's counsel.)

THE COURT: All right. Attorney Bernard, do you have any reason to believe that the Defendant is not competent to waive jury trial?

MR. BERNARD: No, Your Honor.

THE COURT: Then we will give you the form and you or Attorney Sheehan-Balchon can sign and date the waiver of right to jury trial.

(Waiver signed by Government's counsel.)

THE COURT: I find that the Defendant has knowingly and voluntarily waived the right to jury trial on Counts 3 and 5, and I therefore approve the waiver that has been signed.

And I will sign that at this time.

(Waiver signed by the Court.)

THE COURT: And I direct that the clerk will docket the waiver of right to jury trial.

And at this time my intention would be to call the jury in to tell them that they've completed their service, thank them for their service, and let them leave. But before I do that, is there any matter that the United States or the Defendant wishes to bring to my attention before we do that?

MR. BERNARD: No, Your Honor.

MS. THOMPSON: Well, Your Honor, in reference to Mr. Terry, may he be excused while we excuse the jury?

THE COURT: Yes. I intend to have him be permitted to leave the courtroom and -- if that's the desire. That's what you wish to have happen?

MS. THOMPSON: Yes, Your Honor.

THE COURT: Okay, thank you.

All right, we'll go into recess and ask the marshals to take Mr. Terry from the courtroom; and then when we're ready, we'll bring the jurors in.

(Defendant exits courtroom.)

THE COURT: All right, Mr. Keys, if you would get the jurors and the alternates, please.

(Jurors seated.)

MR. KEYS, LAW CLERK: Court is in session.

THE COURT: Please be seated.

Good morning, ladies and gentlemen of the jury. Thank you for appearing again today and for your service all of this week.

This is your fifth day. Since I addressed you last night and asked you to come in today for an additional day, this morning Defendant agreed to a non-jury trial as to the rest of the case, which would be Counts 3 and 5., so you're not going to have to listen and adjudicate those claims.

However, let me assure you that I didn't know that for certain until just a few moments ago, and I couldn't dismiss you and say not to come in today because if that hadn't happened, then we would have to have you here to try the case.

But I do want to thank you for your service. Hopefully, you won't be too upset that I send you home instead of keeping you here for the rest of the day. I do appreciate -- you put in five days of service, and it's how our court system works. Without you jurors, we couldn't operate the court system. So thank you very much.

As I said, I watch the witnesses, and I watch the attorneys' presentation, but I also observe the jurors. And I know that you paid attention, you took your duties very seriously, and that's what we expect, and in your case that's what you did. So thank you very much.

You are excused from further jury duty. I assure you,

you will not be called back this term for another trial. But it's possible sometime in the future that you'll be called for jury duty again. And hopefully you look back on this and, if not look at it fondly, at least look at it with the satisfaction that you learned something and you helped the system function. So thank you.

So we'll be in recess until call of court.

MR. KEYS, LAW CLERK: All rise. Court is in recess.

(Jurors exit courtroom.)

THE COURT: Please be seated. I'm going to give the marshals time to bring the Defendant back in and we'll get started, give you a few minutes to get ready, and then we'll proceed with the bench trial.

So I'll be back briefly. Feel free to leave and use the restroom or whatever you need to do.

(Brief recess taken.)

(In open court, with Defendant present.)

THE COURT: Please be seated.

Are the parties ready to begin with Counts 3 and 5 on the bench trial?

MS. SHEEHAN-BALCHON: Yes, Your Honor.

MS. THOMPSON: Yes, Your Honor.

THE COURT: Okay. I'll first note obviously I was present for all the evidence that came in on Counts 1 and 2, and we can use that for Counts 3 and 5. So no need to bring

evidence in that's already come in in the first part of the trial.

And do the parties have any stipulated matters that need to be addressed first?

MS. SHEEHAN-BALCHON: We do, Your Honor.

THE COURT: Okay, thank you. Go ahead.

MS. SHEEHAN-BALCHON: If I may, Attorney Thompson.

MS. THOMPSON: Yeah -- should we also give a copy of this exhibit --

MS. SHEEHAN-BALCHON: Sure --

(Off the record discussion.)

THE COURT: All right. Attorney Sheehan-Balchon, you have some stipulations to offer?

MS. SHEEHAN-BALCHON: We do, Your Honor.

For the Court's information, these are joint stipulations that have been filed as per the docket at Document 208.

The stipulation of facts for admission that on or about June 2nd of 1998, in Case No. 97-CR-593-2 in the United States Court for the Eastern District of Pennsylvania, the Defendant, John T. Terry, was convicted of a crime punishable by imprisonment for a term exceeding one year. On the days alleged in the superseding indictment the Defendant John T. Terry knew he had been convicted of a crime punishable by imprisonment for a term exceeding one year.

The second stipulation, Your Honor, the Smith & Wesson M&P Shield .40 caliber semi-auto pistol listed in Count 3 and Count 5 of the superseding indictment was test-fired and found to function properly and to be capable of discharging the type of ammunition for which it was designed and manufactured.

Stipulation No. 3, on or about June 24, 2017, Jimmy Hernandez reported to the Philadelphia Police Department that his Smith & Wesson M&P Shield .40 caliber semi-automatic pistol bearing Serial No. HSU6371 had been stolen from his residence on or about April 24, 2017.  That Smith & Wesson M&P Shield .40 caliber semi-automatic pistol bearing Serial No. HSU6371 remained reported in the Commonwealth Law Enforcement System's network listed as stolen through April 4th of 2018.

Stipulation No. 4, Your Honor, Robert J. Manns, a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives, is duly qualified based upon his prior training and experience and is hereby recognized as an expert in the field of firearms and ammunition interstate nexus investigations and determinations.

Agent Manns's curriculum vitae, which has been marked as Government's 40, sets forth Special Agent Manns's training and experience.  The parties agree that Special Agent Manns's curriculum vitae, Government's Exhibit 40, shall be admitted into evidence.

In that same stipulation, Your Honor, and, further, Special Agent Manns was contacted by investigators to conduct an interstate nexus determination for a .40 caliber Smith & Wesson firearm bearing Serial No. HSU6371. Special Agent Manns investigated the interstate nexus of said firearm and determined that the .40 caliber Smith & Wesson bearing Serial No. HSU6371 was manufactured by Smith & Wesson and its subsidiaries, with parts of the manufacturing process occurring in Connecticut and Massachusetts.

It is Agent Manns's opinion within a reasonable degree of scientific certainty that the .40 caliber Smith & Wesson firearm bearing that serial number was not manufactured in the Commonwealth of Pennsylvania and subsequent to its manufacture moved in interstate commerce. Agent Manns further opines within a reasonable degree of scientific certainty that the .40 caliber Smith & Wesson firearm bearing Serial No. HSU6371 meets the definition of a firearm as defined in Title 18 United States Code, Section 921 and therefore is not considered an antique firearm.

Special Agent Manns prepared a letter report containing his findings, which has been marked as Government's Exhibit 41. The parties agree that Government 41 shall be admitted into evidence.

Your Honor, this stipulation includes prior stipulation regarding chain of custody that was already

provided to the Court and actually used in phase one of the trial, so I would seek to incorporate that final stipulation regarding chain of custody as well.

And I would move based upon that stipulation to admit Government's 40 and 41.

THE COURT: Attorney Thompson?

MS. THOMPSON: No objection.

THE COURT: Forty and 41 are admitted without objection.

MS. SHEEHAN-BALCHON: Your Honor, we have also stipulated today to the admission of Defendant's Exhibit H as in Harry. That particular exhibit, Your Honor, is a two-page exhibit which has just been provided to the Court. It is a Federal Bureau of Investigation report of interview dated February 12 of 2019.

That report details an interview of Robert Dillard that occurred on February 6th of 2019, and the stipulation involves after being advised of the identities of the interviewing agents and the nature of the contact, Mr. Dillard provided the following information. Specifically, Mr. Dillard did not know the Terrys to carry firearms, with the common understanding that "the Terrys" refers to Gerald and John Terry.

THE COURT: All right. H is admitted.

MS. SHEEHAN-BALCHON: Thank you, Your Honor.

Your Honor, does the Court need a copy of Government's 40 and 41? I believe it should have been included in your original exhibit book.

THE COURT: Do we have those?

MR. KEYS, LAW CLERK: They should be in the binder.

THE COURT: Do you have an extra copy?

MS. SHEEHAN-BALCHON: Sure.

THE COURT: We might as well just take your extra copy.

Thank you.

Is the stipulation itself submitted as a written document or just --

MS. SHEEHAN-BALCHON: Your Honor, I can provide a written copy. It's on the docket as ECF -- I believe 208.

Here's an additional copy for the Court.

THE COURT: Are you marking that as an exhibit for trial then?

MR. BERNARD: I can, Your Honor.

THE COURT: Can we do that so we would have it as an exhibit then?

MS. SHEEHAN-BALCHON: This will be Government's 44.

THE COURT: Forty-four. Any objection to the stipulation itself, 44, being admitted?

MS. THOMPSON: No, Your Honor, thank you.

THE COURT: Okay. Forty-four is admitted.

MS. SHEEHAN-BALCHON:  With the admission of those exhibits, Your Honor, and that stipulation, the Government would rest as to phase two of this bench trial.

THE COURT:  All right.

Attorney Thompson?  Do you have evidence to present with regard to phase two?

MS. THOMPSON:  With the admission of Defense Exhibit H, we would rest as far as evidence, Your Honor.

THE COURT:  Okay.  So both parties have rested.

I'm obviously pretty familiar with your respective views of the case and how things should be viewed for evidence purposes, but even though you've already given closings on Counts 1 and 2, are you going to give a brief closing as to 3 and 5?

MS. SHEEHAN-BALCHON:  Yes, Your Honor, brief.

THE COURT:  Go ahead.

MS. SHEEHAN-BALCHON:  Your Honor, as to Count 3, most of the elements of that crime have been satisfied by stipulation.  I would indicate as to the second element, John Terry knowingly possessed the firearm described in Count 3 of the first superseding indictment.  I would rely on and incorporate the testimony of Trooper Ryan Marmol who indicated in phase one of this trial with respect to the recovery of the firearm in very close proximity to the drugs that are the subject of the underlying conviction in phase one.

So that would be the Government's argument as to satisfying all of the elements regarding Count 3.

Your Honor, I would just ask the Court to consider various factors in its consideration of Count 5. Our argument is that we have, in fact, established factors that prove that the gun was possessed in furtherance of a drug crime. We're asking the Court to consider the type of activity that was being conducted. In fact, this was a higher level drug transaction, three kilograms of cocaine.

The firearm was clearly accessible, not only within the same vehicle that John T. Terry and his brother Gerald Terry occupied and used to facilitate this drug transaction, but it was contained within a very small space within this vehicle with the drugs.

The type of firearm, Your Honor, highly concealable, Smith & Wesson .40 caliber firearm.

We have a stipulation as well, Your Honor, that the firearm was stolen, which is another important consideration for the Court.

The factor as to whether or not the Defendant possessed the firearm illegally is borne out by our contention and stipulation as to his prior conviction prohibiting him from having a firearm.

The next consideration for the Court to consider is whether or not the firearm was loaded. In fact, it was. That

was the testimony of Trooper Marmol.

The time -- the next element, Your Honor, that we're indicating is in favor of the Government's position that this was possessed in the furtherance of the drug trafficking activity, the time and circumstances under which it was found.

Your Honor heard testimony from Brian Wright in this case as to the concealed compartment within this vehicle, how sophisticated it was, and I believe that even Trooper Marmol's testimony bore out that it was very difficult for him to find this concealed compartment, taking him over an hour of inspection on the side of the turnpike for Trooper Marmol to actually find this sophisticated trap.

The final consideration that is obviously within the Government's favor supporting conviction, Your Honor, is the immediate proximity. We're not even talking about close, not the same room, not the same house. We're talking about the immediate proximity of this particular firearm to the three kilograms of cocaine and methamphetamine that were found, again within the same concealed compartment in the same vehicle within inches of each other, the drugs that Mr. Terry has been convicted of possessing with intent to distribute.

With that, Your Honor, we would rest and ask the Court to convict him of Counts 3 and 5.

THE COURT: All right, thank you.

Attorney Thompson?

MS. THOMPSON:  Thank you, Your Honor.

Your Honor, with reference to the indictment at Count 3, I still do believe that it's about knowing.  And John Terry did not knowingly possess the firearm itself.  And although I understand he -- or we agreed and stipulated to the fact that he knew he had a prior record, but there has been no evidence that he knew he could not possess the firearm.  So I think that's another thing that, one, he did not know that the firearm was there to be possessed.  And, two, I think there's still an issue of knowing that he could not have possessed the firearm, even though knew he had a prior record.  I still think those are two different distinctions.

And, again, the mere proximity or association is not enough; and even if the jury believed that there was some degree of conspiracy, I think also with the Defense Exhibit H, that guns or firearms have never been used for that conspiracy, they thought it was a conspiracy for drug activity.  By Mr. Dillard's statements, there is no knowledge for prior acts of them carrying firearms to deliver drugs.  So I don't think that has been established as a part of the conspiracy for him to be held accountable with somebody else where the co-conspirator may have done it.

For Count 5, again, same argument in reference to the presence at the scene; it's not enough.

Also, Your Honor, the Government didn't charge just

that it was -- the firearm was used during or in relation to the drug sales, the drug trafficking, or that he carried it at the time. What they charged is that it was used in furtherance of. And I understand that there was -- some of those factors are possibilities, but in furtherance of drug trafficking should be a higher standard, meaning that there should be some evidence that the firearm was possessed to maintain jurisdiction, the firearm was possessed to maintain safety against competitors, or -- but none of that was proven or established by the Government.

And I think, again, the Government's lay witness who says that the drugs were being brought to him and had been brought to him before have never seen the Terrys with a firearm, so there is no evidence to support that the firearm was needed to assist and to promote a claimed drug trafficking endeavor. So I believe that that count should fail.

Thank you, Your Honor.

THE COURT: Okay, thank you.

Any rebuttal?

MS. SHEEHAN-BALCHON: Your Honor, just very briefly.

I know the Court is aware of this, but there is not an element that the Government is required to satisfy that Mr. Terry knew he was not permitted to have a firearm. The element is that he knew he had sustained a conviction. And the Government has proven that by stipulation.

That's all.  Thank you, Your Honor.

THE COURT:  All right.

The Court intends to issue written conclusions of law and a verdict on this, and then it's going to take the recess to finish preparing that in accordance with what the law is applicable to this case and to review any notes and testimony that were taken down by the Court during the court sessions.

So we're going to go into recess.  I have perhaps approximately 10:22.  I don't have an exact time, but I will come back in this morning, obviously, and then announce it.  So if you could be reached and be here within 15 minutes, the same we would do with a jury being out, and then you can come back and I'll put my findings on the record.

So if you want to go somewhere else -- and you don't need to stay in the courtroom; we'll let you know when we're ready.  But it will be this morning, not this afternoon.  So -- anything further from counsel?

MS. SHEEHAN-BALCHON:  No, Your Honor.

MS. THOMPSON:  No, Your Honor.

THE COURT:  All right.  If you want to -- I do want to put on the record again that I was impressed, and I want to commend both counsel on their presentations and professionalism throughout the case.  And you both represented your respective clients very effectively, and that's what you're supposed to do, and I commend you for that.

All right, we'll be in recess until call of court. We have your cellphone numbers and that sort of thing, and I can let you know.

MS. THOMPSON: Yes, sir.

THE COURT: I don't think it's going to take all that long. I mean we're not talking about noon to come back, but I'm going to need some time to go through some of the things.

So thank you.

MR. KEYS, LAW CLERK: Court is in recess.

(Recess taken.)

(In open court, with Defendant present.)

THE COURT: Please be seated.

I will now publish the verdict with conclusions of law with regard to Counts 3 and 5.

I'm going to read it into the record, and then I will also docket a signed written copy of the following.

Count 3: With respect to Count 3, the Court first reviews the elements of the crime of being a felon in possession of a firearm. First, that the Defendant has been convicted of a felony, that is a crime punishable by imprisonment for a term exceeding one year, and that on the dates set forth in the first superseding indictment the Defendant knew he had been convicted of a crime punishable by imprisonment for a term exceeding one year.

Second, that after this conviction, the Defendant

knowingly possessed the firearm described in Count 3 of the first superseding indictment. Third, that Defendant's possession was in or affecting interstate or foreign commerce.

United States versus Adams, 35 F.4th 137, Pages 143-144, Third Circuit, 2022, noting that in Rehaif v United States, 139 Supreme Court 2191, Page 2200 (2019), the Supreme Court held that a Defendant must knowingly possess a firearm and also know that he belongs to the relevant category of persons barred from possessing a firearm. See also Greer v United States, 151 Supreme Court 2090, Page 2095, (2021), indicating that an individual knows that he belongs to the relevant category of persons barred from possessing a firearm when he knew he was a felon when he possessed the firearm -- and the phrase "he knew he was a felon" is emphasized.

With respect to the first element, the parties have stipulated that on or about June 2, 1998, John T. Terry was convicted of a crime punishable by imprisonment for a term exceeding one year, ECF No. 208 at 1. Further, the parties have stipulated that on the dates alleged in the first superseding indictment John T. Terry knew he had been convicted of a crime punishable by imprisonment for a term exceeding one year. The Court credits the stipulations and accepts them as true.

Therefore, because John T. Terry had a prior felony conviction when he allegedly possessed a firearm on April 4,

2018, and because he knew of that prior felony conviction as of that date, the Court finds that the first element is satisfied beyond a reasonable doubt.

Turning to the second element, having heard all of the evidence in the case, the Court finds that John T. Terry knowingly possessed the controlled substances found in the hidden compartment in the vehicle in which he was riding on April 4, 2018.

The Court further credits the testimony of Trooper Ryan Marmol who testified that there was a firearm present along with the controlled substances in the hidden compartment. Therefore, given all the evidence in the case, the Court finds that John T. Terry knowingly possessed the firearm found in the hidden compartment of the vehicle in which he was riding on April 4, 2018, just as he knowingly possessed the controlled substances located in that hidden compartment.

Accordingly, the Court finds that the second element is satisfied beyond a reasonable doubt.

Turning finally to the third element, the parties have stipulated that it is Special Agent Robert J. Manns's opinion within a reasonable degree of scientific certainty that the .40 caliber Smith & Wesson firearm bearing Serial No. HSU6371 (the firearm found in the hidden compartment of the vehicle in which John T. Terry was riding on April 4, 2018) was not manufactured in the Commonwealth of Pennsylvania and subsequent

to its manufacture moved in interstate commerce, ECF No. 208 at Page 2.

Further, Special Agent Manns indicated that parts of the manufacturing process for the Smith & Wesson occurred in Connecticut and Massachusetts. The Court credits this opinion and accepts it as true. Therefore, from this testimony, the Court infers that the firearm that John T. Terry knowingly possessed on April 4, 2018, had traveled in interstate commerce prior to his possession. Accordingly, the Court finds that the third element is satisfied beyond a reasonable doubt.

In sum, the Court finds that the Government has proven beyond a reasonable doubt that John T. Terry is guilty of the offense charged at Count 3 of the first superseding indictment.

Count 5: With respect to Count 5, the Court first reviews the elements of the crime of possessing a firearm in furtherance of a crime of violence or a drug trafficking crime. First, that the Defendant committed the crime of possession with intent to distribute 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine and cocaine as charged in Count 2 of the first superseding indictment. Second, that the Defendant knowingly possessed a firearm in furtherance of this crime. See United States v Sparrow, 371 F.3d 851 at Pages 852-853 (3d Cir. 2004).

With respect to the second element, the following factors bear on whether possession of a firearm advanced or

helped forward a drug trafficking crime. One, the type of drug activity that is being conducted; two, accessibility of the firearm; three, the type of the weapon; four, whether the weapon is stolen; five, the status of the possession (legitimate or illegal); six, whether the gun is loaded; seven, proximity to drugs or drug profits; and eight, the time and circumstances under which the gun is found, N at Page 853.

Turning to the first element, the jury found John T. Terry guilty of the offense at Count 2 of the superseding indictment beyond a reasonable doubt. Therefore, the Court finds that the first element is satisfied beyond a reasonable doubt.

Turning to the second element, having considered all of the evidence at trial, the Court finds that John T. Terry possessed the firearm in the hidden compartment in the vehicle in which he was riding on April 4, 2018, in furtherance of a drug trafficking crime. Indeed, the Court found the following evidence produced at trial highly credible.

The firearm was located in a hidden compartment directly next to distribution-level quantities of cocaine and methamphetamine. The firearm was stolen, ECF No. 208 at 1, 2. John T. Terry possessed the firearm while knowing he was a convicted felon, making that possession illegal.

This evidence and other evidence produced at trial leaves the Court to conclude beyond any reasonable doubt that

John T. Terry possessed the firearm found in the hidden compartment of the vehicle in which he was riding on April 4, 2018, in furtherance of a drug trafficking crime.

In sum, the Court finds that the Government has proved beyond a reasonable doubt that John T. Terry is guilty of the offense charged at Count 5 of the first superseding indictment.

Therefore, the following order:  And, now, this 26th day of August, 2022, upon consideration of all the evidence produced at trial, it is the finding of the Court that the Government has proven beyond a reasonable doubt that John T. Terry is guilty of the offenses charged at Count 3 (possession of a firearm by a person convicted of a crime punishable by imprisonment for a term exceeding one year) and Count 5 (possession of a firearm in furtherance of a drug trafficking crime) of the first superseding indictment.

It is hereby ordered that disposition of sentencing for Defendant is set for January 11, 2023, at 10:30 a.m. in Courtroom A of the federal courthouse in Johnstown, Pennsylvania, which is this courtroom.

That concludes the second phase of the trial with regard to Counts 3 and 5.  And do the parties have anything additional for the Court at this time?

MR. BERNARD:  No, Your Honor.

MS. THOMPSON:  Your Honor set the sentencing date for January 11th?

THE COURT: Yes.

MS. THOMPSON: Okay. Just looking at my calendar, the current event that I have, I can see there is a conflict for that particular day. I don't know if Your Honor had availability for the following week or to try to re-schedule the sentencing --

THE COURT: Well, what I can do is I can check with the clerk and -- what dates would you have available around that same time period?

MS. THOMPSON: Right now, the week of the 16th, the week of the 2nd, as well -- basically every two weeks thereafter I would be available alternating weeks.

THE COURT: All right. We'll look for a date probably during the week where the 16th falls, and we will issue an amended order for scheduling sentencing then.

MS. THOMPSON: Thank you.

THE COURT: Okay. All right, that concludes the trial in 18-Criminal-24, United States versus John T. Terry, and the court will be in recess until call of court. Thank you.

MR. KEYS, LAW CLERK: All rise, court is in recess.

(Proceedings concluded.)

C E R T I F I C A T E

I, Shirley Ann Hall, certify that the foregoing is a correct transcript for the record of proceedings in the above-titled matter.

                        s/Shirley Ann Hall
                        Shirley Ann Hall, RDR, CRR
                        Official Court Reporter


                    I N D E X

| EVENT | PAGE |
| --- | --- |
| Government closes | 13 |
| Defense closes | 16 |
| Government rebuts | 17 |
| Verdict | 24 |

                  E X H I B I T S

| NUMBER | IDENTIFIED | ADMITTED |
| --- | --- | --- |
| Govt. Ex. 40 | 9 | 11 |
| Govt. Ex. 41 | 10 | 11 |
| Govt. Ex. 44 | 12 | 12 |
| Deft. Ex. H | 11 | 11 |

                    * * * *