UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : Criminal No. 3:18-cr-00024-KRG |
| | : |
| v. | : |
| | : |
| JOHN T. TERRY (aka "Tyree Terry"), | : |
| Defendant | : J. Gibson |

**DEFENDANT'S SENTENCING MEMORANDUM
AND MOTION FOR DOWNWARD VARIANCE**

HERE COMES, the Defendant, John T. Terry (hereafter "Mr. Terry"), by

his attorney, Sandra Thompson, Esq., who does file this Sentencing Memorandum

And Motion For Downward Variance and, in support thereof, avers the following:

## I.   **Introduction**

Mr. Terry is a man who since serving his time for juvenile offenses has tried his

best to serve his family and the community. Mr. Terry respectfully requests that

this Honorable Court would grant a substantial variance and would sentence him to

ten (10) years imprisonment, which is the same sentence given to his brother,

Gerald Terry, co-defendant.

Through a Superseding Indictment, a Grand Jury charged Mr. Terry with four

offenses. (ECF No. 62). At Count One ("Count I"), the Grand Jury charged Mr.

Terry with conspiring to distribute and to possess with the intent to distribute 500

grams or more of a mixture and substance containing a detectable amount of

methamphetamine, and a detectable amount of cocaine, both Schedule II controlled

1

substances, in violation of Title 21, United States Code, possessing with the intent to distribute 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, and a detectable amount of cocaine, both Schedule II controlled substances, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(l)(A)(viii), and 841(b)(l)(B)(ii). (Id. at 2). At Count Three ("Count III"), the Grand Jury charged Mr. Terry with unlawful possession of a firearm by a convicted felon, in violation of Title 18, United States Code, Section 922(g)(1). (Id. at 3). Finally, at Count Five ("Count V"), the Grand Jury charged Mr. Terry with unlawful possession of a firearm in furtherance of a drug trafficking crime (the crime charged at Count II of the Superseding Indictment), in violation of Title 18, United States Code, Sections 924 (c)(l)(A) and 24(c)(l)(C)(i). (Id. at 5).

Mr. Terry's motion to bifurcate trial was granted (ECF Nos. 180, 190). On August 22, 2022, phase one of the trial began. (ECF No. 209). On August 25, 2022, the jury found Mr. Terry guilty of the offenses at Count I and Count II of the Superseding Indictment. (ECF No. 217). On August 26, 2022, before phase two of the jury trial, Mr. Terry waived his right to trial by jury with respect to the charges at Counts III and V of the Superseding Indictment and proceeded to a bench trial. (ECF Nos. 218, 219). On that same date, the Court found Mr. Terry guilty of the offenses at Counts III and V of the Superseding Indictment. (ECF No. 220).

On September 8, 2022, Mr. Terry filed posttrial motions for Judgment of Acquittal and for a new trial that were denied on July 11, 2023, after amendment and briefing. (ECF Nos. 226, 245, 262).

## II.    United States Sentencing Guidelines Calculation

A.    For Counts 1, 2, and 3:

Mr. Terry suggests that the offense level of conduct is minimally 28 and a maximum of 30.   The Pennsylvania State Police crime lab determined the substance weighed 2995 grams. Identified as cocaine, based on that weight, the base offense level would be 26. However, with the determined presence of an unknown amount of methamphetamine in the mixture, the base offense level for 2995 grams is 32. See USSG § 2D1.1(c), notes to Drug Quantity Table (A) (2018).

1. Base Level= 32

2. Adjustment for Role in the Offense: Under §3B1.2. Mitigating Role
   minimal participant        -4             Adjusted level= 28
   minor participant          -2             Adjusted level = 30

3. Mr. Terry's criminal history category is III.  Therefore, based on a total adjusted level of 28, then his sentencing guideline range is 97–121 months incarceration.  Based on a total adjusted level of 30, then his sentencing guideline range is 121–151 months incarceration.

B.    Based on the cocaine levels, excluding the methamphetamine, then

1. The Base Level= 26

2.  Adjustment for Role in the Offense: Under §3B1.2. Mitigating Role

    minimal participant       -4            Adjusted level= 22

    minor participant        -2            Adjusted level = 24

3.  With a criminal history category of III, then at a total adjusted level of 22, then his sentencing guideline range is 51–63 months incarceration.  Based on a total adjusted level of 24, then his sentencing guideline range is 63–78 months incarceration.

For counts 1, 2, and 3, Mr. Terry respectfully requests this Honorable Court to find good and sufficient cause for a downward departure from 51 months of incarceration and/or would substantially vary from the applicable guideline range to form a sentence no greater than necessary to accomplish the goals of sentencing.

C.    For Count 5, sec. 924 (c ) offense that is listed as his second offense within fifteen (15) years due to a twenty (20) year old conviction where he was released from incarceration in July 2005.  In 1998, when Mr. Terry was twenty-two (22) years old he was charged with assisting an accomplice who possessed a firearm during a robbery. Mr. Terry did not possess the firearm. He was found to aid the co-defendant by trying to punch the victim to help the co-defendant get away from the victim's grasp.

Based on this prior conviction, the statute provides for a sentence to a term of imprisonment of not less than 25 years which must run consecutive to a

4

sentence imposed for counts 1, 2, and 3.   The guideline sentence for a section 924(c) offense is the minimum term of imprisonment required by statute. USSG §2K2.4. Punishments under section 924(c) run consecutive to any other term of imprisonment. 18 U.S.C. § 924(c)(1)(D)(ii).

In the fiscal year of 2020, there were 2525 cases of 924 (c ) offenses whereas 51% of the persons charged were African American.  In 2018, there were 2564 cases. https://www.ussc.gov/sites/default/files/pdf/research-and-publications/quick-facts/Section_924c_FY20.pdf.

To reduce racial disparities and mass incarceration, the imposed sentences for 924 (c) convictions have reduced since 2016 by downward variances[1]. Id.

For Count 5, Mr. Terry respectfully requests this Honorable Court would find good and sufficient cause to substantially vary from the applicable guideline range to form a sentence no greater than necessary to accomplish the goals of sentencing.

### III.    POST-BOOKER SENTENCING

Ushering in a new era of judicial discretion, United States v. Booker, 543 U.S. 220 (2005), held that the guideline ranges are only advisory, and the District Court may tailor the sentence considering other statutory concerns as outlined in 18

---

[1] Other reasons included a downward departure for substantial assistance.

U.S.C. § 3553(a). See, Id. See Also, Kimbrough v. United States, 552 U.S. 85, 101 (2007)(Guidelines are advisory and the Court is free to disagree with the Guidelines range and stated policy considerations). The Court in Gall v. United States, 552 U.S. 38, 39 (2007), went further away from strict adherence to the sentencing guidelines finding that the District Court may not presume the Sentencing Guidelines range is reasonable, but instead, the Court "must make an individualized assessment". Id. Gall provided the District Court with greater latitude in deciding sentencing issues. Id at 49. Even though the Sentencing Guidelines must be respectfully considered by the Court, "[T]hey are one factor among the § 3553(a) factors that are to be taken into account in arriving at an appropriate sentence." United States v. Carty, 520 F.3d 984 (9th Cir. 2008) (en banc). Thus, consideration of the advisory Guidelines range is subordinate to the mandate that the punishment must be a particularized sentence minimally sufficient to accomplish the statutory purposes of sentencing. See, Carty, 520 F.3d at 995 (emphasis added). This discretion reflects the federal judicial tradition that permits the sentencing judge to consider every convicted person as an individual and every case as a unique study. In 924 (c) the statute provides the guideline sentence. A District Court may reject any Guideline provision on policy grounds so long as the District Court does so reasonably. United States v. Grober 624 F.3d 592 (3d Cir. 2010).

When imposing sentence, District Court follows a three-step process. First, the Court calculates the advisory sentencing guideline range. See, U.S. v. Gunter, 462 F.3d 237, 247 (3d Cir. 2006). Second, the Court considers and rules on motions for departure and details how the Court's departure ruling affects the guideline calculation. See Id, *citing* U.S. v. Booker, 543 U.S. 220 (2005). Third, the Court exercises its considerable discretion by considering the factors set forth in 18 U.S.C. § 3553(a) to determine whether a variance is appropriate. See Id.

## IV.    18 U.S.C. § 3553(a) FACTORS

In pertinent part, 18 U.S.C. § 3553(a) provides the court shall impose a sentence sufficient, but not greater than necessary:

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

A.    <u>Nature And Circumstances Of The Offense</u>

Mr. Terry understands that he was convicted of serious offenses as described in the Introduction. Respecting the jury and the Court's verdicts, Mr. Terry

maintains that he traveled with his brother who admitted to the crimes. When stopped, Mr. Terry was relaxing in the front passenger seat with his shoes off. After an extensive search, the Trooper found a hidden compartment whereas all the triggering mechanisms were in or at the driver's side. Cellphones attributed to Mr. Terry were found in the vehicle with evidence attributed to Mr. Terry's knowledge of the hidden compartment and therefore possession of the firearm and the controlled substances found therein. Also, the intended buyer testified that the controlled substances were meant for him; and he expected and purchased from both Terry brothers before.

Mr. Terry's brother, Gerald Terry, pled guilty to the charges for which Mr. Terry is charged and was sentenced to an aggregate of ten (10) years incarceration followed by five (5) years supervision. Robert Dillard, the cooperating buyer, pled guilty to conspiring to distribute and to possess with the intent to distribute 500 grams or more of a substance containing a detectable amount of cocaine, not a methamphetamine mixture, Schedule II controlled substance, in violation of Title 21, United States Code, and was sentenced to five (5) years' probation.

Therefore, a ten (10) year sentence was found sufficient, but not greater than necessary to satisfy the 5335(a) factors.

B.    History And Characteristics Of The Defendant

Mr. Terry is a 48-year-old African American man who was raised by his mother and father as the youngest of four children, three brothers, in the same house and the same neighborhood of his birth. His parents and siblings were loving and supportive.  His parents provided necessities. His father generally worked as an entrepreneur and his mother stayed at home until she finally found work within the Office of Social Security Administration.

In the neighborhood where he was raised, Mr. Terry was exposed to unsavory characters who also introduced him to violence and the abuse of controlled substances where he began using marijuana and Percocet as teenager.

In 1997, he moved out of his parents' home to reside with a woman who was pregnant to support her and the child. During this time, Mr. Terry lost the positive influence of his parents and made bad decisions on associations. Mr. Terry then learned that the child was not his biological child as he was led to believe.  In 1998, at around age 22, he was convicted of robbery charges affecting interstate commerce and 924 (c ).  For his part in the matter, he tried to punch the victim to assist the accomplice in getting away from the victim.

While incarcerated, Mr. Terry obtained a certificate for Interior Finishing in 2001. Mr. Terry was released from incarceration around July 27, 2005.  From the

9

time of his release, Mr. Terry tried to repay his debt to society by giving back to the community as well as being present for and supporting his son and fiancée. Mr. Terry's son is 25 years old, attends college, and is a productive member of society and the family.  Mr. Terry is engaged to Tresena Baker with which they have shared a long-term relationship of twelve years.

Before April 2018, Mr. Terry was employed with his father in construction. Mr. Terry also served the community by working with Philadelphia Ceasefire by speaking to youth, giving donations to basketball tournaments for anti-bullying.

Mr. Terry has had limited disciplinary issues while incarcerated, except for having excessive food items. For the past three years while incarcerated and having limited medical treatment available to him, Mr. Terry has suffered severe nerve pain in his back and neck.  He was prescribed the medications naproxen and ibuprofen which were ineffective in resolving the pain, so he stopped taking the medications. While incarcerated, Mr. Terry was infected by the Coronavirus, COVID-19, twice, and has residual difficulty breathing for which the prison has prescribed an inhaler. Mr. Terry further developed stomach problems after a battery was discovered in his food.

C. The Need For The Sentence Imposed

As heretofore stated, there is no need for a sentence greater than ten (10) years to accomplish the goals of sentencing, the same as co-defendant. Adherence to the guidelines may result in an aggregate sentence of over thirty-five years, more if the base sentence level of 32 is maintained. Mr. Terry then may not be released until he is late seventy to in his eighties, which amounts to a life sentence. A study[2] found that in 2022, the life expectancy for African American males is 66.7 years.

**V.      The Methamphetamine Guidelines Are Not Based On Empirical Data**

The Court's opinion in United States v. Hayes, 948 F.Supp.2d 1009 (2013), the Northern District of Iowa, addressed several issues concerning the methamphetamine sentencing guidelines, including the development of the sentencing guidelines as compared to the development of the methamphetamine guidelines. Hayes found that although the original sentencing guidelines were developed through an empirical approach that included analysis of 10,000 presentence reports. Id. at 17-18, while drug-trafficking offenses presented an exception. The Court found the Sentencing Commission did not use the same

---

[2]3-15-2023, Racial Equity and Health Policy Key, Data on Health and Health Care by Race and Ethnicity, https://www.kff.org/racial-equity-and-health-policy/issue-brief/what-is-driving-widening-racial-disparities-in-life-expectancy/

empirical approach in developing guideline ranges. Instead, the Commission conformed the drug-trafficking guideline ranges with the statutory minimums that were being passed by Congress because of political and social reactions to a perceived epidemic of drug use. Thus, the mandatory minimums implemented by Congress, which focused on the drug weight and quantity, effectively raised the guideline ranges for drug-trafficking offenses.

In analyzing sentences imposed in methamphetamine cases, the Court further found that in 2011, the average sentence length was 144 months for methamphetamine offenders. This was the "highest average sentence length for any drug type," even though only 38.3% of methamphetamine offenders that were subject to a mandatory minimum in 2011 received a sentence within the Guidelines range. Id. at 28. Concluding, despite over 60% of methamphetamine offenders receiving sentences below the guideline range, the average sentence was still the highest average sentence among drug-trafficking offenses. "Thus, methamphetamine Guidelines are entitled to less deference than those Guidelines that were based on the Commission's exercise of institutional expertise and empirical analysis." Id. at 31-32. The Court further found "a variance based on a policy disagreement is particularly appropriate for methamphetamine offenses because the Guidelines range results in sentences greater than necessary to achieve sentencing objectives and the Guidelines are not based on empirical data and

national experience. Hayes at 39. (*citing* Kimbrough v. United States, 552 U.S. at 96 (2007) ("The Commission did not use this empirical approach in developing the Guidelines sentences for drug-trafficking offenses.")(citing Gall v. U.S., 552 U.S. 38, 46 n.2 (2007) ("[T]he Sentencing Commission departed from the empirical approach when setting the Guidelines range for drug offenses, and chose instead to key the Guidelines to the statutory mandatory minimum sentences that Congress established for such crimes.").  This has caused judges throughout the county to significantly vary the sentences of those facing methamphetamine trafficking convictions. In 2019, 32.3% of defendants sentenced for methamphetamine trafficking received a variance. United States Sentencing Commission, Quick Facts: Methamphetamine Trafficking Offenses (June 2019) (Available at https://www.ussc.gov/sites/default/files/pdf/ research-and-publications/quick-facts/Methamphetamine_FY19.pdf). Of the defendants who received a variance below the guideline range, their average sentence reduction was 32.8%. Id.

## VI. Application Of USSG § 2D1.1 To Achieve A Greater Offense Level Is Unnecessary To Comply With The Purposes Of Sentencing

Application of USSG § 2D1.1 Guideline provision is unnecessary to comply with the purposes of sentencing and would create an unjust result. The informant provided information that he received cocaine from Mr. Terry.  The Trooper

conducted a preliminary test and found cocaine.  There was no evidence found on the cellphones or otherwise providing reason to believe Mr. Terry had any knowledge of the presence of methamphetamine within the mixture. The evidence presented by the Government does not suggest the level of involvement by Mr. Terry that would inform him of the exact characteristics of the substance. Applying the offense level of methamphetamine to these facts would create an unnecessarily and disproportionately punitive result and would only act to undermine the statutory goal of a sufficient, but not greater than necessary, sentence.

## VII.   USSG §5 K2.0(a)(1)(A) and (a)(2) – OTHER GROUNDS

In addition, Mr. Terry submits the onerous and restrictive COVID-19 conditions while in pre-trial detention at the Cambria County Prison ("CCP") warrant consideration. Although the CCP's COVID-19 protocols were designed to protect inmates from the virus, those protocols clearly resulted in significantly harsher conditions of incarceration than would typically have been experienced by individuals in a pre-trial detention status. The conditions at CCP which Mr. Terry experienced included frequent and lengthy lockdowns, at times 23 hours per day for weeks at a time, resulting in substantial restrictions on his movements, exercise, and recreation time. Mr. Terry's ability to attend self-improvement classes,

including substance abuse, educational, and other programming, was hampered as classes were unavailable for over two years. Moreover, he experienced substantial delays in health care services and was precluded from receiving in-person visits from relatives, friends, even counsel visits were restricted for a substantial time limited to a virtual, non-contact setting. Mr. Terry was infected with COVID-19 and was subject to quarantines and additional restrictions.

These restrictions are significant when viewed in the context that pretrial detention for defendants who have not yet been convicted of any criminal offense is designed to protect the public and assure a defendant's presence at trial. It is not intended to serve as punishment. As recognized by the Supreme Court, "That the Eighth Amendment protects against future harm to inmates is not a novel proposition. The Amendment, as we have said, requires that inmates be furnished with the basic human needs, one of which is 'reasonable safety.' It is 'cruel and unusual punishment to hold convicted criminals in unsafe conditions.'" Helling v. McKinley, 509 U.S. 25 (1993) (internal citations omitted). In addition to these constitutional protections, Section 3553 also requires the Court to consider the health of defendant. 18 U.S.C. § 3553(a)(2)(D) states that courts must consider the need "to provide the defendant with needed … medical care". Taken together, the existing legal framework clearly permits this Court to consider the impacts on Mr.

Terry's physical and emotional health during his period of pretrial detention at the Cambria County Prison during the ongoing COVID-19 pandemic.

The Bureau of Prisons and the courts recognized that the COVID-19 pandemic made conditions within prisons "harsher and more punitive" than would otherwise have been the case. To address this, efforts were made to place sentenced prisoners in home confinement.

## VIII.  Attached Character Reference statements on Behalf of Mr. Terry

1. 10-14-22 Rev. Dr Carlice Harris Jackson
2. 11-6-2018 Rev. Dr Carlice Harris Jackson
3. Tyrone Mallory, Ultimate Driver staffing
4. Harris Butt. Mother
5. Calil Terry, son
6. Anthony Terry, brother
7. William Thompson, cousin
8. Trasena K. Baker, fiancé
9. Leah Harris, Calil Terry's mother
10. Tia Ellis, friend
11. Adam Morrow, friend
12. Yusef Savage, friend
13. Nifesha Williams, friend
14. Marvin Kilgore
15. Quinzel Tomoney, Philadelphia Ceasefire
16. Karl Williams, Black male Development Symposium

## IX.    CONCLUSION

This Honorable Court should grant a downward departure for Counts 1, 2, and 3, and should vary significantly from the mandatory guideline sentence for

Count 5, whereas a sentence of ten years incarceration is sufficient to accomplish the purpose and is consistent with the principle that, "the punishment should fit the offender and not merely the crime," Pepper v United States, 562 U.S. 476 (2011), *citing* Williams v. New York, 337 U.S. 241, 247 (1949). The Supreme Court has observed a consistent and uniform policy "under which a sentencing judge could exercise a wide discretion in the sources and types of evidence used to assist him in determining the kind and extent of punishment to be imposed within limits fixed by law," Williams, 337 U.S. at 246. The sources and types of information that can be considered is extremely broad and encompasses "the fullest information possible concerning the defendant's life and characteristics," Williams, 337 U.S. at 247. That principle has since been codified at 18 U.S.C. § 3661, which provides that, for the purpose of imposing an appropriate sentence, "[n]o limitation shall be placed on the information concerning the background, character, and conduct," of a defendant.

DATED: August 4, 2023          Respectfully Submitted:

/s/ Sandra Thompson
Sandra Thompson, Esq. PA I.D. 84345
Law Office of Sandra Thompson, LLC
351 E. Princess St., P.O. Box 1901
York, PA 17405
Telephone/Fax: 215-987-3650
Email: sthompsonLLC@gmail.com

Counsel for Defendant

17

## PROOF OF SERVICE

I, Sandra Thompson, Esq., do hereby certify that the Government was served with a true and correct copy of Defendant's Sentencing Memorandum And Motion For Downward Variance pursuant to LCvR 5.6 by electronic means to the extent and in the manner authorized by the Standing Order regarding Electronic Case Filing Policies and Procedures and the ECF User Manual as follows:

Arnold P. Bernard, Jr., A.U.S. A

United States Attorney's Office
Suite 200 - Penn Traffic Building
319 Washington Street
Johnstown, PA 15901

Email: Arnold.bernard@usdoj.gov

DATED: August 4, 2023          Respectfully Submitted:

/s/ Sandra Thompson
Sandra Thompson, Esq. PA I.D. 84345
Law Office of Sandra Thompson, LLC
351 E. Princess St., P.O. Box 1901
York, PA 17405
Telephone/Fax: 215-987-3650
Email: sthompsonLLC@gmail.com
Counsel for Defendant