IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

_____

UNITED STATES OF AMERICA,
                    Plaintiff,

                                                Criminal Action
          vs                                    No. 18-24

JOHN T. TERRY,
                    Defendant.


_____

          Transcript of Sentencing proceedings held on
Thursday, August 10, 2023, United States District Court,
Johnstown, Pennsylvania, before the Honorable Kim R. Gibson,
U.S. District Court Senior Judge.


APPEARANCES:

For the Government:              ARNOLD P. BERNARD, JR., Esq.
                                 U.S. Attorney's Office
                                 319 Washington Street, Suite 200
                                 Johnstown, PA  15901
                                 arnold.bernard@usdoj.gov




For the Defendant:               SANDRA THOMPSON, Esq.
                                 351 E. Princess Street
                                 P.O. Box 1902
                                 York, PA  17405
                                 sthompsonLLC@gmail.com




Court Reporter:     Shirley Hall, RDR, CRR
                    U.S. Courthouse, Suite 204
                    Penn Traffic Building
                    319 Washington Street
                    Johnstown, PA  15901
                    shirleyhall_uscra@yahoo.com

Proceedings recorded by digital stenography; transcript
produced by computer-aided transcription.

P R O C E E D I N G S

(In open court.)

THE COURT:  This is the time and place set for sentencing in the case of United States versus John T. Terry, Criminal No. 18-24.

And would counsel enter their appearance, please.

MR. BERNARD:  Good afternoon, Your Honor.  May it please the Court, Arnold Bernard on behalf of the United States.

MS. THOMPSON:  Good afternoon, Your Honor.  May it please the Court, Sandra Thompson on behalf of John Terry.

THE COURT:  Good afternoon to both of you and to the Defendant and to others present today.

Before I proceed any further, I do want to make a part of the record today an additional letter that was given to my clerk -- given to my clerk by Attorney Thompson.  And we'll make that as an exhibit today, and I'll hand that down to the court reporter.

So that's part of the record now, Mrs. Thompson.

MS. THOMPSON:  Thank you, Your Honor.

THE COURT:  Attorney Thompson, if you and Mr. Terry would step to the lectern, please.

And, Miss Gorgone, if you would administer the oath to the Defendant, please.

MS. GORGONE, DEPUTY CLERK:  Would you please raise

your right hand.

Do you solemnly swear or affirm that the evidence you shall give to the Court in the cause now trying shall be the truth, the whole truth, and nothing but the truth so help you God?

THE DEFENDANT:  Yes.

MS. GORGONE, DEPUTY CLERK:  Thank you.

THE COURT:  Mr. Terry, you are represented today by Attorney Thompson, who has represented you throughout the trial in this matter and throughout the sentencing process.  Is that correct, sir?

THE DEFENDANT:  Yes.

THE COURT:  Have you used any illegal drugs or consumed any alcoholic beverage in the last 24 hours?

THE DEFENDANT:  No.

THE COURT:  Are you currently on any medications?

THE DEFENDANT:  No.

THE COURT:  Let the record reflect that Mr. Terry has been found guilty of the offenses at Counts 1, 2, 3, and 5 of the superseding indictment at Criminal No. 18-24, and I will place those counts on the record at this time.

Count 1:  Between on or about March 30, 2018, to on or about April 4, 2018, in the Western District of Pennsylvania and elsewhere, the Defendants John T. Terry, a/k/a Tyree Terry, and Gerald Terry and others known to the Grand Jury did

knowingly, intentionally and unlawfully conspire, confederate and agree together and with one another to distribute and to possess with the intent to distribute 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine and a detectable amount of cocaine, both Schedule II controlled substances, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A)(viii), and 841(b)(1)(B)(ii), in violation of Title 21, United States Code, Section 846.

Count 2:  On or about April 4, 2018, in the Western District of Pennsylvania, the Defendants John T. Terry, a/k/a Tyree Terry, and Gerald Terry did knowingly, intentionally, and unlawfully possess with intent to distribute 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine and a detectable amount of cocaine, both Schedule II controlled substances, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A)(viii), and 841(b)(1)(B)(ii).

Count 3:  On or about April 4, 2018, in the Western District of Pennsylvania, the Defendant, John T. Terry, a/k/a Tyree Terry, having been convicted on or about June 2, 1998, in Case No. 97-Criminal-593-2 in the United States District Court for the Eastern District of Pennsylvania of interference with interstate commerce by robbery, which is a crime punishable by imprisonment for a term exceeding one year, did possess in and

affecting interstate commerce a firearm, to wit: a loaded Smith & Wesson M&P Shield .40 caliber semiautomatic pistol, and did so knowingly, in violation of Title 18, United States Code, Section 922(g)(1).

Count 5:  On or about April 4, 2018, in the Western District of Pennsylvania, the Defendant, John T. Terry, a/k/a Tyree Terry, knowingly and unlawfully did possess a firearm, that is, a loaded Smith & Wesson M&P Shield .40 caliber semiautomatic pistol, in furtherance of a drug trafficking crime for which he may be prosecuted in a court of the United States, that is, possession with intent to distribute 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine and a detectable amount of cocaine, both Schedule II controlled substances, in violation of Title 21, United States Code, Section 841, as charged at Count 2 this indictment, in violation of Title 18, United States Code, Sections 924(c)(1)(A) and 924(c)(1)(C)(i).

Following the conviction at the trial, the United States Probation Office conducted a presentence investigation and prepared a presentence investigation report.

From August 22, 2022, through August 25, 2022, the Court held a jury trial on Counts 1 and 2 of the superseding indictment at Criminal No. 18-24.

On August 25, 2022, the jury unanimously found Mr. Terry guilty of the offenses at Counts 1 and 2 of the

superseding indictment.

On August 26, 2022, Mr. Terry waived his right to a jury trial with respect to the offenses at Counts 3 and 5 of the superseding indictment and proceeded to a bench trial on those counts. On that same day the Court found that the Government had proven beyond a reasonable doubt that Mr. Terry is guilty of the offenses at Counts 3 and 5 of the superseding indictment.

On September 8, 2022, Mr. Terry filed an omnibus post-trial motion for judgment of acquittal and/or motion for a new trial.

On January 13, 2023, Mr. Terry filed an amended omnibus post-trial motion for judgment of acquittal or, in the alternative, motion for a new trial.

On July 11, 2023, this Court issued a memorandum opinion and order denying the motions at ECF Nos. 226 and 245.

On December 6, 2022, the Probation Office filed a draft presentence investigation report.

On December 27, 2022, a final presentence report was filed.

On January 12, 2023, the United States Probation Office filed an addendum to the presentence investigation report, noting that the Probation Office had not received the Government's position with respect to sentencing factors or Defendant's position with respect to sentencing factors.

On January 17, 2023, the United States filed its position with respect to sentencing factors, stating that it adopted the findings in the presentence report.

On July 14, 2023, the United States filed a second position with respect to sentencing factors.  The United States stated that it takes no issue with the calculation of the applicable sentencing guidelines and statutory penalties.  However, it set forth certain objections to certain paragraphs of the PSR.

On July 14, 2023, the Defendant filed his position with respect to sentencing factors, lodging several objections to the PSR.

On July 19, 2023, the United States Probation Office filed a supplemental addendum to the PSR in which it addressed the Government's and Mr. Terry's objections to the presentence report.

On August 4, 2023, Mr. Terry submitted a sentencing memorandum as well as a motion for downward variance.  This filing includes many letters in support of Mr. Terry.

On August 9, 2023, the Court issued its tentative findings and rulings.

On August 9, 2023, this Court issued a memorandum order, ECF No. 268.  In that document the Court first adopted the supplemental addendum to the PSR including all changes to the PSR reflected in the supplemental addendum.

Second, the Court explained why it finds unavailing Mr. Terry's objections to the statutory mandatory minimums in this case.

Third, the Court explained why it finds unavailing Mr. Terry's argument that his total offense level should be 26 because the offenses of which he was convicted did not involve methamphetamine, as well as his assertion that his adjusted offense level should be lower because he was a minimal or minor participant in the events.

Finally, the Court explained that it will consider during this hearing all of Mr. Terry's arguments for departure and/or variance that were not previously addressed by the Probation Office in the supplemental addendum to the PSR.

Mr. Terry and Attorney Thompson, have you both had an opportunity to review the presentence investigation report, the addendum thereto, and the supplemental addendum thereto, and this Court's tentative findings and rulings?

THE DEFENDANT:  Yes.

MS. THOMPSON:  Yes, we have.

THE COURT:  Mr. Terry, do you understand the purpose of the presentence investigation report and its contents?

THE DEFENDANT:  Yes.

THE COURT:  Now, before hearing from the parties with regard to any motions for departure from the sentencing guidelines, if any, I will first review the sentencing

guideline calculations as set forth in the presentence report, addendum and supplemental addendum.

The Court first notes that the federal sentencing guidelines are advisory rather than mandatory in their application upon this Court.  The 2021 edition of the guidelines manual including all amendments will be used in this case.

With regard to offense level computation:  The guideline for 18 United States Code, Section 924(c) offenses, Count 5, is found in Guidelines Section 2K2.4.  It is specified in that section that the guideline for this violation is the term required by the statute.  The statute requires that a mandatory 25-year term of imprisonment is to be served consecutively to any other term of imprisonment imposed.

It is also specified in Guidelines Section 3D1.1(b) that any count for which the statute mandated imposition of a consecutive sentence is excluded from the grouping rules.  It is further directed in Guidelines Section 5G1.2(a) that the sentence to be imposed on a count for which the statute mandates a consecutive sentence shall be determined and imposed independently.

Accordingly, a guideline offense level will be calculated for Counts 1, 2 and 3 only.

Considering that the weapon charged in Count 3 was possessed within the meaning of Guidelines Section 2D1.1(b)(1),

it is grouped with Counts 1 and 2 pursuant to Guidelines Section 3D1.2(c).  Counts 1 and 2 also group under 3D1.2(d) as the offense levels are based primarily on the quantity of substances involved.

A comparison of the guideline calculations must be made to determine which guideline produces the highest offense level and, therefore, produces a controlling guideline.  The guideline for Counts 1 and 2 is 2D1.1, and the guideline for Count 3 is 2K2.1.  In this case Guidelines Section 2D1.1 produces the higher offense level.  Therefore, it is the controlling guideline.

With regard to base offense level, pursuant to Guidelines Section 2D1.1, Commentary Application Note 8(B), the drug equivalency table provides a means for combining different controlled substances to obtain a single offense level.

Pursuant to Guidelines Section 2D1.1, notes to the Drug Quantity Table A, if the mixture and substance contains more than one controlled substance, the weight of the entire mixture or substance is assigned to the controlled substance that results in the greatest offense level.

The base offense level for 2,995 grams of methamphetamine is 32.  The base offense level for 2,995 grams of cocaine is 26.  Therefore, in this case the mixture and substance weighed 2,995 grams and contained methamphetamine and cocaine, which establishes a base offense level of 32.

With regard to specific offense characteristics, it is noted that an enhancement pursuant to Guidelines Section 2D1.1(b)(1) for the possession of a dangerous weapon, including a firearm, will not apply in this case.

Application Note 4 of Guidelines Section 2K2.4, Count 2, states that if the sentence under the guideline is imposed in conjunction with a sentence for an underlying offense, do not apply any specific offense characteristics for possession of a firearm when determining the sentence for the underlying offense, including any such enhancement that would apply for which relevant conduct would be applicable.  Absent this application note, a two-level enhancement would have been applied.

There are no victim related adjustments, there is no adjustment for role in the offense, there is no adjustment for obstruction of justice.  Therefore, the adjusted offense level subtotal is 32.

There are no Chapter 4 enhancements.

There is no adjustment for acceptance of responsibility in that the Court finds that Defendant has not clearly demonstrated acceptance of responsibility for the offense pursuant to 3E1.1 of the guidelines.

Applying the adjustments as stated above results in a total offense level of 32.

The Court notes that Defendant objected in

Objection 11 to the presentence report to this calculation, and that report objection has been ruled upon by the Court in the order docketed on August 9, 2023, at Docket No. 268, at Pages 12, 13, and 14.

Moving to criminal history score, the total criminal history score in this case is 6.  According to the sentencing table at Guidelines Chapter 5, Part A, a criminal history score of 6 establishes a criminal history category of III.

Do counsel agree with the calculation of the criminal history category?

MR. BERNARD:  Yes, Your Honor.

MS. THOMPSON:  Yes, Your Honor.

THE COURT:  With regard to sentencing options available to this Court, with regard to custody, as to Counts 1 and 2:  Under the statute, the minimum term of imprisonment is ten years and the maximum term is life, and that is pursuant to 21 United States Code, Section 846, 841(b)(1)(A)(viii).

Count 3:  The maximum term of imprisonment is ten years pursuant to 18 United States Code, Section 922(g)(1) and 954(a)(2).

With regard to Count 5:  The minimum term of imprisonment is 25 years and the maximum term is life, pursuant to 18 United States Code, Section 924(c)(1)(A) and 924(c)(1)(C)(i).  A term of imprisonment at Count 5 must be

imposed consecutively to any other counts.

With regard to guideline calculations, based upon a total offense level of 32 and a criminal history category of iii, the guideline imprisonment range is from 151 to 188 months.

There is no impact from a plea agreement in that this case went to trial.

With regard to supervised release, for Counts 1 and 2, the Court may impose a term of supervised release of at least five years pursuant to 21 United States Code, Sections 846, 841(b)(1)(A)(viii); Count 3, the Court may impose a term of supervised release of not more than three years pursuant to 18 United States Code, Section 3583(b)(2). With regard to Count 5, the Court may impose a term of supervised release of not more than five years, pursuant to 18 United States Code, Section 3583(b)(1). Multiple terms of supervised release shall run concurrently pursuant to 18 United States Code, Section 3624(e).

Under the guidelines, for Counts 1 and 2: Since the offenses are Class A felonies, the guideline range for a term of supervised release is two years to five years; however, in no event less than the mandatory minimum required by statute, which in this case is five years pursuant to Guidelines Section 5D1.2(a)(1) and (c).

Count 3: Since the offense is a Class C felony, the

guideline range for a term of supervised release is one year to three years, pursuant to 5D1.2(a)(2).

Count 5:  Since the offense is a Class A felony, the guideline range for a term of supervised release is two years to five years, pursuant to 5D1.2(a)(1).

With regard to probation:  Under the statute, Counts 1 and 2:  The Defendant is not eligible for probation because the offenses are Class A felonies, and it is expressly precluded by statute pursuant to 18 United States Code, Section 3561(a)(1) and (2), 21 United States Code, Sections 846 and 841(b)(1)(A)(viii).

For Count 3:  The Defendant is not eligible for probation because the Defendant will be sentenced at the same time to a term of imprisonment for the same or a different offense, pursuant to 18 United States Code, Section 3561(a)(3).

For Count 5:  The Defendant is not eligible for probation because the offense is a Class A felony and is expressly precluded by statute, pursuant to 18 United States Code, Section 3561(a)(1) and (2).

Under the guidelines, for Counts 1 and 2:  The Defendant is not eligible for probation because the offenses are Class A felonies and probation has been expressly precluded by statute pursuant to Guidelines Section 5B1.1(b)(1) and (2).

Count 3:  The Defendant is not eligible for probation because the Defendant will be sentenced at the same time to a

term of imprisonment for the same or a different offense, pursuant to Guidelines Section 5B1.1(b)(3).

With regard to Count 5:  The Defendant is ineligible for probation because the offense is a Class A felony and probation has been expressly precluded by statute, pursuant to Guidelines Section 5B1.1(b)(1) and (2).

With regard to a fine, for Counts 1 and 2:  The maximum fine by statute is $10 million pursuant to 21 United States Code, Sections 846, 841(b)(1)(A)(viii).

For Counts 3 and 5:  The maximum fine is $250,000 pursuant to 18 United States Code, Section 3571(b)(3).

For Counts 1, 2, 3 and 5:  A special assessment of $100 for each count is mandatory, for a total of $400.

Under the guidelines, the fine range is from $35,000 to $10 million.  If the Defendant is convicted under a statute authorizing a maximum fine greater than $500,000, which is the case here, the Court may impose a fine up to the maximum authorized by statute, pursuant to Guidelines Sections 5E1.2(c)(3) and (c)(4).

Costs of prosecution shall be imposed on the Defendant as required by statute, Guidelines Section 5E1.5.

In determining whether to impose a fine and the amount of such fine, the Court shall consider among other factors the expected costs to the Government of any term of probation or term of imprisonment and term of supervised release imposed,

Guidelines Section 5E1.2(d)(7) and 18 United States Code, Section 3572(a)(6).  These costs may include drug and alcohol treatment, electronic monitoring, and/or contract confinement costs.

Restitution is not applicable in this case under statute or by guidelines.

With regard to forfeiture, according to the forfeiture allegation at the superseding indictment, the following property is subject to forfeiture to the United States, pursuant to 21 United States Code, Section 853(a)(1):  A black Smith & Wesson M&P .40 caliber handgun bearing Serial No. HSU6371.

With regard to denial of federal benefits, at the discretion of the Court, the Defendant having been convicted of a first drug distribution offense shall be ineligible for any and all federal benefits for up to five years after such conviction pursuant to 21 United States Code, Section 862(a)(1)(A).

Under the guidelines:  The Court, pursuant to 21 United States Code, Section 862, may deny the eligibility for certain federal benefits of any individual convicted of distribution or possession of a controlled substance, pursuant to Guidelines Section 5F1.6.

Attorney Thompson, did you review with the Defendant the statutory ranges and sentencing guideline ranges that I

have just recited, as well as the other factors used for sentencing found in 18 United States Code, Section 3553(a)?

MS. THOMPSON:  Yes, we did, Your Honor.

THE COURT:  Mr. Terry, since Attorney Thompson has reviewed with you the sentencing factors at Title 18, United States Code, Section 3553(a), do you wish for the Court to read those to you again at this time or do you waive that reading?

THE DEFENDANT:  I waive it.

THE COURT:  All right, thank you.

The Court has reviewed the written documents that are docketed in this matter.  Are there any other written documents that have not been docketed that should be reviewed by the Court other than the letter that has already been made a part of the record?

MR. BERNARD:  No, Your Honor.

MS. THOMPSON:  No, Your Honor.

THE COURT:  All right, thank you.

MS. THOMPSON:  And, Your Honor, if I may just state for the record that that was a letter from Cecelia Chambers, who is the grandmother of Mr. Terry's son Calil Terry.

THE COURT:  Okay, thank you.

And since we made that an exhibit for today's proceeding, and it will be reflected in the exhibit.

Attorney Thompson, on behalf of your client, other

than objections you've already raised, do you have any additional objections to the factual content or sentencing calculations in the presentence investigation report as revised by the addendum and supplemental addendum?

MS. THOMPSON:  No, Your Honor.

THE COURT:  Do you have any objections to the Court's tentative findings and rulings?

MS. THOMPSON:  No additional objections, Your Honor.

THE COURT:  Attorney Bernard, does the United States have objections to the factual content or sentencing calculations in the presentence report as revised by the addendum and supplemental addendum?

MR. BERNARD:  No, Your Honor.

THE COURT:  Does the United States have any objections to the Court's tentative findings and rulings?

MR. BERNARD:  No, Your Honor.

THE COURT:  At this time the Court adopts the tentative findings and rulings docketed in this matter as the findings and rulings of the Court.

Do counsel for the parties have any motions for departure from the sentencing guidelines as -- apart from variances which I'll take up in a moment?

MR. BERNARD:  Not on behalf of the United States.

MS. THOMPSON:  Your Honor, in reference to -- and whether it's departure or variance, Your Honor, would generally

be similar argument in assessing for Counts 1, 2 and 3 that for the guideline ranges we're looking at the -- for Counts 1 and 2 being controlling, and having a guideline range of 151 to 188, I believe; and with the mandatory minimum being ten years, we're asking Your Honor to, in that case, not sentence him to anything greater than the mandatory minimum of the ten years.

THE COURT:  All right.

Attorney Thompson, I intend to take into account the motions for departure that were indicated by Defendant as part of the presentence report review, and specifically 5H1.1, 5H1.4, 5H1.6, and 5H1.11; and I will address them as bases for variance as opposed to departure.  I don't find that the requirements for motion for departure on those grounds are sufficient.  However, I will consider them for purposes of variance.

MS. THOMPSON:  Thank you, Your Honor.

THE COURT:  So for the -- to the extent that the motions for departure are pending, as indicated by the Probation Department, those motions for departure for age, physical condition, drug dependence, family ties, responsibilities, charitable and public service are denied for departure purposes but will be considered for variance purposes.

MS. THOMPSON:  Thank you, Your Honor.

THE COURT:  Attorney Bernard, do you have any motions

for departure?

MR. BERNARD: No, Your Honor; and the Court addressed what would essentially have been the Government's position with respect to the Defendant's departure requests, that the requirements for departure have not been adequately shown. However, those same factors can and should be considered by the Court in the Defendant's request for variance.

THE COURT: All right, thank you.

Anything further from either counsel with regard to motions for departure prior to us moving to what's normally referred to as Gunter Step 3, where we will consider variance issues?

MS. THOMPSON: No, Your Honor.

MR. BERNARD: The only -- the only thing I would reference, Your Honor, is I believe in the Defendant's sentencing memorandum there was reference made to Section 5K2.0, Subsections (a)(1)(A) and (a)(2). I don't know if the Defendant had any additional argument with respect to 5K2.0(a)(2), which is departure based on factors which are not included in Section 3553(a). I didn't know if the Court intended to address that under the same umbrella as the other departure provisions that it had previously referenced.

THE COURT: I will certainly consider that for variance purposes unless Attorney Thompson wishes to pursue --

MS. THOMPSON: Well, Your Honor, I had assumed that

was your judgment, that you said you reviewed it and --

THE COURT:  Yes.

MS. THOMPSON:  -- so that's what I assumed, that was your judgment.

THE COURT:  All right.  Then I'll include that with the numbers that I had previously set forth.  So in addition to 5H1.1, 5H1.4, 5H1.6 and 5H1.11, I'll also include 5K2.0(a)(2).

MS. THOMPSON:  And that goes on Page 14 of the motions.  There was also 5K2.0(a)(1)(A) as well.

THE COURT:  (a)(1)(A) --

MS. THOMPSON:  Yes.

THE COURT:  -- will also be considered.  I will consider all of those for purposes of variance.

All right.  Then at this point in time we will move to, as I said, what we normally refer to as Gunter Step 3.  And at this time, Attorney Thompson, you can present argument on behalf of your client with regard to variance or any other sentencing issue that you believe is appropriate.

MS. THOMPSON:  Your Honor, if I may step back to the family -- they came in a little later, once we started.  I would -- if -- if in addition to the letters, if anyone wanted to speak to Your Honor, if you would allow that and let me see if there is someone that did want to speak.

THE COURT:  All right.  We will go into recess without leaving the courtroom to permit you to talk with the family

members, and please let the Court know when you're ready to proceed.

MS. THOMPSON:  Thank you, Your Honor.

THE COURT:  And, Mr. Terry, you can have a seat at counsel table rather than stand there.

(Brief recess taken in place.)

MS. THOMPSON:  Your Honor, this is John Butt, Senior, the father.

THE COURT:  All right, sir.  You can come up to the lectern and --

THE WITNESS:  Right here?

THE COURT:  Right there is fine.  Just speak into the microphone, and you can address the Court on whatever issue you wish to address, sir.

THE WITNESS:  Well, good morning, Judge, people of the court.

I'm just a little in awe first of all.  And I don't know how to say that he's been a tremendous asset to his family, his son, you know, and our community.  I mean -- I don't know how many letters we needed, but I found it difficult for me to try to figure out -- what's the word -- attending -- he's a really good kid.

He got caught up early in life and he did his little bit and got out.  And during this here situation, he really had no knowledge about what was going on.  And I hear this

presented about the brother and this and that, but I feel like he's being charged with conspiracy and things of that nature that he had no knowledge about.

But I'll tell you, what a wonderful kid.  He got himself together after he paid for, and he was just turning 21. He became an entrepreneur.  He had stores --

THE COURT:  Attorney Thompson, can you make sure he's speaking into the microphone?

THE WITNESS:  (Overtalking the Court.)

THE COURT:  I want to make sure I hear everything he says.

MS. THOMPSON:  Yes, Your Honor.

THE COURT:  Go ahead, sir.  I had trouble hearing you there for a moment.

THE WITNESS:  Okay.  Can you hear me now?

THE COURT:  Yes.

MS. THOMPSON:  Speak right in there.

THE WITNESS:  Yes.  I just want to say like, you know, he's been like a real asset to the community, active in petitions, with neighbors, and helping, you know, and looking out for the children or helping them go into different athletic programs.  Like I said, he's become an entrepreneur by starting his own business and things of that nature.

But I -- I never saw this coming.  I always believed in him because he didn't expect to go out supposedly to a

meeting and end up in some other crack.

But I'm just asking, Judge, to lean on him -- I mean just trust; and he was not really involved in this.  I really appreciate you consider that in the sentencing.  Hopefully we can find a way to clear his name all together from this incident.

Thank you.

THE COURT:  Thank you, sir.  Thank you, sir.

MS. THOMPSON:  Your Honor,this is Harrise Terry.  She did submit a letter.  She also wants to speak; this is his mother.

THE COURT:  All right, thank you.

Yes, I've received your letter and welcome.

WITNESS NO. 2:  Okay.  I just want to say that John is my baby son and I just ask, you know, that you give him leniency, you know, when you go over.  He's -- he's good.  You know, he's a good kid, you know.  You know, he deserves another chance and I'd just like for you -- he has a good heart, and I'd just like for you, you know, to be lenient, you know, in your -- what's going to go on today in sentencing.

THE COURT:  All right, thank you.

MS. THOMPSON:  So this is a brother, Anthony Terry.

WITNESS NO. 3:  Yes, Your Honor, I'm Anthony Terry. I'm John Terry's brother.

He's a good guy.  Really.  He's -- he did a lot for

me, he did a lot for the community, he did a lot for the family. You have my letter that I sent you, and I just wanted to say that please be lenient on him and please give him a second chance. Thank you.

THE COURT: Thank you, sir.

MS. THOMPSON: So, Your Honor, if it please you, before I give an argument, Mr. Terry, John Terry, would like to address the Court.

THE COURT: All right, sir. If you'd come back to the lectern, please; and you may address the Court at this time.

THE DEFENDANT: Good afternoon.

Though I don't agree with the decision of the Court and jury, I accept what's going on. I got to live with it.

I apologize to my family and my friends, my loved ones for all this. It's been a real hardship on us. I just would like for you to be lenient when it comes to your decision and your sentencing and -- oh, I'm sorry. I'm John Terry.

All right. I'm -- I'm a young man. I'm a son, I have a son. I'm loving, I'm caring, I'm concerned. I made mistakes in the past as a juvenile, as a child. And I didn't know what happens as a juvenile would come and haunt me as a grown man 20 years later, 20-plus years later.

And like I said, my family's getting old, my father has a disability. I don't know how much time they're going to be here with me. So if you can be considerate with the

sentencing and also with placing me somewhere close to Philadelphia, maybe, whereas though I can be able to commute with my family -- talk with my family, see them in visits.

And like I said, whatever time I do receive, I'm going to use it in a positive way to strengthen my faith, my communication with my family, my education, and just better myself. I feel like I let myself down, I let my family down. It's obviously hurtful to everyone, and I just want a fresh start and change. And that's it.

THE COURT: All right. Thank you, sir.

Attorney Thompson.

MS. THOMPSON: Would you like him to have a seat, Your Honor?

THE COURT: He can stay there or -- if you wish him to or he can have a seat.

MS. THOMPSON: You can have a seat.

THE DEFENDANT: Okay.

MS. THOMPSON: Thank you, Your Honor.

I know Your Honor did review and has already stated that you will consider some of the arguments that was made in the sentencing memorandum and motion for downward variance, so I don't want to belabor the issues by repeating things that you've already read.

For the most part, Your Honor, I just -- you -- I understand and we all know the basic social and community

considerations for the laws that -- from the substance, mixture, and the factors that again I know -- I understand that this was addressing Gerald Terry's sentencing, the fact that even the end user doesn't know what's contained in that mixture.

But the reality is these are middleman level. These are still the street level. These are not the manufacturers of the substances. So even at that level, they don't know what's in that mixture either, just as the end user may not know what's in that mixture.

And I know you also have the argument of the uncertainties in the ranges for the methamphetamines calculations, so I know you reviewed that, and I understand that it is only but so much pervasive because of the fact -- or persuasive because of the fact that it is the law, Your Honor, so I do understand that.

And all these other issues that was already raised in the motion of -- from the COVID conditions being an extra hardship -- not only that, but Mr. Terry had health ailments that was brought forth in the motion brought to the Court. He had other issues while incarcerated of having a substance found in his food that also contributed to having another health scare while incarcerated. So all of those types of things made doing time, quote/unquote, even harder for him.

For the firearm charge, again, I understand and I know

that you have the same arguments for the co-defendant.  And I understand that he is held to the possession, even constructive possession of the firearm.  But it was not used, it was not brandished, it was not readily available.  So I think that is something.

And the fact that the informant, Mr. Dillard, didn't know the Terrys to carry a firearm says that in their dealings they didn't brandish it, they didn't make it known; so even if believing Mr. Dillard, then it still says that they did not make it a part of brandishing firearms.

In this being a second offense, 924(c), leading to the 25-year mandatory, so back when Mr. Terry was 22 years old, he obtained a 924(c).  But even in the account by the Probation Office of what occurred, Mr. Terry did not actually have possession of that firearm.

So, again, it may have been some degree of constructive possession because of, as a 22-year-old, Mr. Terry, who did not carry a firearm himself, gave some assistance to a person who was engaged in a robbery with a firearm by when a person was grabbed by the intended victim, Mr. Terry punched a person.

So Mr. Terry himself is not in the habit of carrying and brandishing or using firearms, which was the intent of this law, to punish those who are in that habit.

Now, is he in the habit of making bad decisions to

associate with those who do?  Because he doesn't have any -- again, he had a 924(c), yes; but no actual possession where a firearm was found on him.  But, yes, as a conspirator; yes, as constructive possession and joint possession.

So, Your Honor, and again through the 17 letters, various people through family, friends -- even one of the letters was from -- I think her name is Nifesha Boyd now.

But it was through the probation report, it was mentioned how John Terry initially moved out of his parents' house to move in with in Nifesha or -- her name now is Nifesha Williams, but it was Nifesha Boyd then -- move in with her friend and Nifesha, believing that he was helping to take care of her child because he thought the child was his; and then he later learned that that child was not his, but they still stayed friends and friendly that she would even write a letter on his behalf.

So that is the type of person -- and the letters that was presented is more of the totality of who Mr. Terry is, even in and irrespective of the other bad decisions that he may have made in his life.

So, Your Honor, I would ask that you would grant a variance from the mandatories that are implicated in this case, which would be a minimum -- well, more than that, if you applied the guidelines -- but it could be between somewhere of 35 to 40 years as a possibility.

And, you know, that does become a life sentence. Again, I know I argued this in the motion -- that does become a life sentence with the average life expectancy of an African American male and especially when he already has pre-existing health conditions, as Mr. Terry has informed the Court and has been treated for even at the prison at Cambria County.

So, Your Honor, I would ask -- now, I do understand that a pretrial offer is not necessarily an indication of anything. But at the time the Government offered 18 years. Now, Mr. Terry did reject that because he believed in his innocence. But if the Government believed that that was sufficient to hold him accountable and to deter -- to have a deterrent effect, then I would ask Your Honor to consider something to that effect or less as you consider a variance.

And then also, as Mr. Terry had asked, that you would consider placement in somewhere close to the Philadelphia area.

I would also ask that Your Honor would consider not making Mr. Terry ineligible for federal benefits. If he, by the grace of God, is able to -- whatever the sentence is that you give to him, he's probably going to be in his 60s, his 70s, to probably 80s depending on what the sentence is. And having someone to try to re-enter society without assistance can just lead them back into some degree of criminality. So being able to be able to get some assistance to get back on your feet is going to be very important to -- he enters society as a

positive member.

So as Mr. Terry said, he's going to continue on his positive track and try to educate himself to try to maintain employability, even. But, again, I think we all can imagine how technology is going to evolve in the next 20, 30 or 40 years. So depending on what Your Honor does.

So, again, that's all I have, Your Honor.

I don't know if you would like me to stand here or just have a seat or if you have any questions for me.

THE COURT: No, I think you've covered everything very thoroughly and you can have a seat.

MS. THOMPSON: Thank you, Your Honor.

THE COURT: I'll let Mr. Bernard come to the lectern.

MR. BERNARD: Your Honor, the Court has in its recitation at the outset of this hearing accurately set forth the applicable guideline ranges and statutory mandatory minimums and maximum sentences applicable in this case.

That includes an applicable statutory mandatory minimum at Counts 1 and 2 of ten years and an applicable statutory penalty of 25 years which must be run consecutive to any other sentence at Count 5. Those mandatory minimums and the way that they are required to be structured by law results in an aggregate minimum sentence of 35 years.

The guideline range that the Court calculated based on the offense level, the offense conduct resulted in a 151 to

188-month guideline range; so when you add that to the 25-year consecutive mandatory sentence that must be imposed, it results in an effective range of between 451 to 488 months.

Now, the Court has been asked to vary downward from the advisory guideline range and from the mandatory minimums. First I'll address the mandatory minimums.

There is no authority, respectfully, Your Honor, for this Court to vary below the statutorily imposed mandatory minimums. As the Court noted in its memorandum opinion, that is the case, and it remains the case. Congress made explicit findings when drafting the relevant statutes, whether that be the Controlled Substances Act or the 924 section of Title 18, which Congress felt appropriately balanced the need to protect the public and to punish the Defendant for dangerous conduct, conduct involving the distribution of large quantities of controlled substances and for possessing firearms in connection with that type of activity.

It's the possession of a firearm during those activities that greatly increases the likelihood of gun violence. It seems rather basic, but that is the fact.

While -- with respect to the request for variance from the advisory guideline range, I would submit that there is a degree of truth to some of the factors cited by the Defendant. Admittedly, the COVID-19 pandemic did affect the confinement conditions of Mr. Terry as well as every other inmate who was

detained in a prison at that time. So it is something for the Court to consider. However, I don't think that that particular factor carries such weight as to vary downward from the applicable guideline range in this case.

Just to address some of the points raised through the prior argument, I understand that it is the Defendant's position that he and his brother are middlemen level, not manufacturers of controlled substance; and, therefore, that they did not necessarily know what the substance they possessed consisted of.

But the reason for Congress imposing a punishment for what the substances actually are as opposed to what a Defendant might believe them to be is because it is equally as dangerous to the individuals to whom the substances are delivered. Congress saw fit to punish the knowing distribution of possession with intent to distribute a controlled substance. It does not require that the Defendant have the specific knowledge of what that substance is.

In fact, that's part of the jury instructions that were given in this case, that the Defendant possessed with intent to distribute a controlled substance. It does not require a showing that the Defendant knew what that substance was. All that was required to show was that the substance involved was a mixture containing cocaine and methamphetamine as charged in the indictment, and that that mixture and

substance weighed 500 grams or more.

That is consistent with the purpose of the statute. It's consistent with protection of the public. And it's consistent with appropriately punishing individuals who distribute drugs. They should be punished for the consequences of their actions based on what they are, not on what they thought they might be.

With respect to the argument that the cooperating witness in this case provided a statement that he did not know Mr. Terry to carry a firearm, I would simply say that does not mean that Mr. Terry did not, in fact, carry a firearm. That's only one individual's personal knowledge based on their experience. For all Mr. Dillard may have known, Mr. Terry could have possessed the concealed firearm at any point in time. I would submit that that fact alone is not controlling.

While Mr. Terry's prior 924(c) conviction did not involve him personally possessing a firearm, it did involve the possession of a firearm by a co-conspirator. And that is just as dangerous to the community as if the Defendant had possessed one himself. It is the possession of the firearm in connection with a crime of violence or drug trafficking offense that implicates the mandatory minimum, and it is the heightened danger caused by that activity that Congress seeks to deter through the enhanced penalties associated with that conduct.

So I would submit that the fact that Mr. Terry did not

personally possess the firearm during his previous 924(c) conviction and the fact that the firearm was constructively possessed in this case has little to no bearing on the Court's consideration of the sentence to be imposed for that offense.

Lastly, Your Honor, the Defendant mentioned a proposed plea that may have been tendered to him prior to trial in this case.  I would submit that's not appropriate for the Court to consider.  The plea negotiations that are -- that go on between the Government and Defendants take into account certain factors that are not applicable at the time of sentencing and that should not be considered as a basis for imposition of a sentence following a trial.

Some of the factors that go into, you know, a plea proposal -- and this is not an exhaustive list -- are the conservation of Government resources by avoiding an expensive trial in terms of preparation and the time in trial itself, as well as certain other provisions that are included in a plea agreement such as waivers of appellate rights provisions, which further concern the Government's resources.

So there's a number of other benefits that are baked into any sort of proposed plea offer that are not applicable at the time of sentencing following a jury trial, and so any plea offers that may have been tendered are not for the Court to consider in fashioning its sentence.

Your Honor, at the time the Court imposes sentence in

this case, as the Court has found in its memorandum opinion, the Court must impose a sentence of ten years' imprisonment at Count 1 and 2 and must impose a consecutive 25-year term of imprisonment at Count 5.  That is the lowest possible sentence that can be imposed by law in this situation.

With that in mind, the Government, however, maintains that there has not been adequate evidence presented to grant a variance in this case, and the Government would respectfully request a sentence within the advisory guideline range as to Counts 1 and 2 with Count 5's 25-year statutory penalty to be imposed consecutive to that advisory guideline range sentence. Thank you.

THE COURT:  All right.

Attorney Thompson, if you and the Defendant would return to the lectern, please.

Attorney Thompson, do you have any further remarks to make on behalf of Mr. Terry at this time?

MS. THOMPSON:  Your Honor, Mr. Terry would like you to also consider the fact of it being almost 15 years.  And, again, I believe I had mentioned this in the memorandum, but that it was about 15 years before he had been in trouble until this issue occurred in April of 2018.

THE COURT:  All right, thank you.  Anything further?

MS. THOMPSON:  No, Your Honor.

THE COURT:  Attorney Bernard, anything further?

MR. BERNARD:  No, Your Honor.  Thank you.

THE COURT:  Attorney Thompson, is there any reason why sentence should not now be imposed?

MS. THOMPSON:  No, Your Honor.

THE COURT:  Before we move to sentence, I'm going to act on the variance motion.

With regard to the motion for variance made by Defendant in this case, the Court will grant the motion for variance to the extent that it can.  There can be no variance given as to Count 5.  However, as to Counts 1, 2 and 3, the Court will impose a sentence below the guideline range at the mandatory minimum sentence of 120 months, and that will be the sentence that the Court imposes as to Counts 1, 2 and 3.  And then Count 5 will not be affected by the variance determination.

The basis for the variance, I'm going to refer to the motions for departure made by Defendant as to age, 5H1.1; drug dependence, 5H1.4; family ties and responsibilities, 5H1.6; and 5H1.11; as well as -- just one moment -- 5K2.0(a)(2) and 5K2.0(a)(1)(A).  And the variance granted by the Court will be reflected in the sentence imposed.

Additionally, the Court finds at this time that it will not exercise its discretion with regard to finding the Defendant ineligible for federal benefits but, rather, will decline to rule that he is ineligible for federal benefits.

I will now impose sentence.  Pursuant to the Sentencing Reform Act of 1984, it is the judgment of the Court that the Defendant, John T. Terry, is hereby committed to the custody of the Bureau of Prisons to be imprisoned for a term of 120 months at Counts 1 and 2 and 3, to be served concurrently with each other, and 300 months at Count 5, to be served consecutive to Counts 1, 2 and 3, resulting in a total term of imprisonment of 420 months.

Upon release from imprisonment, the Defendant shall be placed on a term of supervised release for a term of five years to consist of five years at Counts 1, 2 and 5 and three years at Count 3, to run concurrently with each other.

Within -- strike that.  The Court further recommends to the Bureau of Prisons in its designation process that the Defendant be housed in a facility geographically close to Philadelphia, Pennsylvania, so that he can have contact with his family during his incarceration.

Within 72 hours of release from the custody of the Bureau of Prisons, the Defendant shall report in person to the Probation Office in the district to which the Defendant is released.  While on supervised release, the Defendant shall not commit another federal, state or local crime, shall comply with the standard conditions of supervision recommended by the Sentencing Commission and adopted by this Court, and shall comply with the following additional conditions.

The Defendant shall not illegally possess a controlled substance.

The Defendant shall not possess a firearm, ammunition, destructive device or any other dangerous weapon.

The Defendant shall submit his person, property, house, residence, vehicle, papers, business or place of employment to a search conducted by the United States Probation or Pretrial Services officer at a reasonable time and in a reasonable manner based upon reasonable suspicion of contraband or evidence of a violation of a condition of supervision. Failure to a search may be grounds for revocation. The Defendant shall inform any other residents that the premises may be subject to searches pursuant to this condition.

The Defendant shall participate in a program of testing and, if necessary, treatment for substance abuse, said program to be approved by the probation officer until such time as Defendant is released from the program by the Court. Further, the Defendant shall be required to contribute to the costs of services for any such treatment in an amount determined by the probation officer but not to exceed the actual cost.

The Defendant shall submit to one drug urinalysis within fifteen days after being placed on supervision and at least two periodic tests thereafter.

It is further ordered that the Defendant shall not

intentionally purchase, possess, and/or use any substance designed to simulate or alter in any way the Defendant's own urine specimen.  In addition, the Defendant shall not purchase, possess, and/or use any device designed to be used for the submission of a third party urine specimen.

The Defendant shall cooperate in the collection of DNA as directed by the probation officer pursuant to law.

The Defendant shall forfeit to the United States a black Smith & Wesson M&P .40 caliber handgun bearing Serial No. HSU6371.

The Defendant shall participate in the United States Probation Office's Work Force Development Program as directed by the probation officer.

The Court finds that the Defendant cannot pay a fine; therefore, imposition of a fine is waived.

It is further ordered that the Defendant shall pay to the United States a special assessment of $400, which shall be paid to the United States District Court Clerk forthwith.

This sentence is imposed after consideration of each of the factors set forth in 18 United States Code, Section 3553(a), and those factors support your sentence as follows.

As to Factor One, offense conduct.  The offense conduct is as follows:  Count 1, conspiracy to distribute and to possess with intent to distribute 500 grams or more of a

mixture and substance containing a detectable amount of methamphetamine and cocaine.

Count 2:  Possession with intent to distribute 500 grams or more of a substance containing a detectable amount of methamphetamine and cocaine.

Count 3:  Unlawful possession of a firearm by a convicted felon.

Count 5:  Unlawful possession of a firearm in furtherance of a drug trafficking crime.

With regard to personal and family data, the Defendant was born in Philadelphia, Pennsylvania, to John Butt, who is a retired contractor, and Harrise Butt, who is a retired Social Security office worker.  Both of these individuals reside in Drexel Hill, Pennsylvania.

The Defendant has three maternal half brothers. According to the Defendant, he was raised in a home comprised of his parents and siblings.  He was raised in a supporting, loving home where both of his parents were employed.  He stated that he was always well provided for and always had the necessities of life.

The Defendant relates that he was never a behavior problem at home or at school and never suffered from abuse or neglect.  He did not witness substance abuse or violence in his home.  However, he was exposed to both of those in the community where he grew up and at school.

The Defendant has never been married.  He has been in a relationship with Trasena Baker for approximately 12 years.  Defendant has one child, Calil Terry, age 25, who is a college student.

With regard to physical condition, Defendant reports -- Defendant reports that he had a lymphoma removed from his back approximately three years ago while incarcerated at the Cambria County Prison.  He is not prescribed any medications however.  He still experiences nerve pain.  He reports no other medical health issues or history thereof.

With regard to mental and emotional health, the Defendant states that he has never been diagnosed with any mental or emotional health issues.

With regard to substance abuse, Defendant reports that he has used marijuana, alcohol, Percocet, and Valium.  Defendant reports that he has never been enrolled in inpatient or outpatient substance abuse treatment.

With regard to education, the Defendant completed the tenth grade at Samuel Fels High School which is located in Philadelphia, Pennsylvania.  He also attended Glen Mills Schools and received his GED.  Defendant also obtained a certificate for interior finishing in 2001 and for welding in 1993.

With regard to employment, his record is somewhat sporadic.

Although the Defendant may own certain real estate properties, due to his liabilities and mandatory incarceration, it does not appear that the Defendant has the financial resources to pay a fine.

The Court also notes that many letters of support were filed on behalf of the Defendant by family and friends.

As to Factor Two, Mr. Terry, your offenses are serious as they are violations of federal law and caused danger to the community.  Your sentence is below the guideline range because although the guideline range generally reflects the seriousness of your offenses, the need for your sentence to reflect punishment and deterrence is satisfied by 420 months of imprisonment, which consists of mandatory minimum terms and five years of supervised release thereafter.

This sentence will hopefully see you become and remain a productive citizen in the community.  This sentence will also serve to deter any similar criminal conduct by you in the future.

A fine is not imposed, but the special assessment of $400 is mandatory.

As to Factor Three, the maximum possible sentence this Court is permitted by statute to impose is life at Counts 1 and 2 and 5, pursuant to 21 United States Code, Section 846, 841(b)(1)(A)(viii); 18 United States Code, Section 924(c)(1)(A), and 924(c)(1)(C)(i).

The sentencing guidelines which are advisory and one factor to be considered provide for a term of 151 to 188 months, not accounting for the mandatory minimum consecutive sentence of 25 years at Count 5.

The Court has chosen to impose a sentence below guidelines. I believe the sentence of 420 months of imprisonment adequately reflects the seriousness of your crimes. This sentence is also severe enough to reflect the danger posed to the community by your crimes.

You do not have the ability to pay a fine, so no fine has been imposed.

As to Factors Four and Five, the sentencing guidelines generally provide a fair gauge of the amount of imprisonment and supervised release that are appropriate; but after taking into account your criminal history and personal history, I find that a below-guidelines sentence of 420 months of imprisonment is sufficient but not greater than necessary to comply with the standard statutory purposes of sentencing. The Court finds that your sentence is appropriate and just punishment in this case in light of the mandatory minimum sentences.

As to Factor Six, in applying a sentence of 420 months of imprisonment, the sentencing guidelines as applied to your specific circumstances present an instance where the sentence imposed is proper. Any disparity with others sentenced for similar crimes is justified in light of several factors and

specific circumstances surrounding you and your crimes, your history of criminal behavior, and your personal history.

As to Factor Seven, restitution is not applicable in this case.

The Defendant has been detained without bond since his arrest and is found not to be a candidate for voluntary surrender based upon the provisions at 18 United States Code, Section 3143(a)(2), and he will remain detained pending his designation by the Bureau of Prisons.

Mr. Terry, you can appeal your conviction if you believe that your conviction was somehow unlawful or involuntary or for some other fundamental defect in the proceedings.

You also have a statutory right to appeal your sentence under certain circumstances, particularly if you think the sentence is contrary to law.

If you cannot afford the costs of an appeal, you have the right to request to proceed with your appeal in forma pauperis. The Clerk of Court will prepare and file a notice of appeal upon your request. With very few exceptions, any notice of appeal must filed within 14 days of the entry of this judgment.

If you -- strike that. Attorney Thompson is reminded of her continuing obligation to represent Mr. Terry on any appeal that will be filed, both under the rules of this court

and under the rules of the Third Circuit Court of Appeals.

Are there any other issues to bring before the Court at this time?

MR. BERNARD:  No, Your Honor; thank you.

MS. THOMPSON:  No, Your Honor.

THE COURT:  All right, thank you.  That concludes this proceeding and we will be in recess until call of court.

MS. THOMPSON:  Thank you, Your Honor.  May we be excused?

MS. GORGONE, DEPUTY CLERK:  Court's in recess.

MS. THOMPSON:  Thank you.

(Whereupon, at 2:30 p.m., court was recessed.)

C E R T I F I C A T E

I, Shirley Ann Hall, certify that the foregoing is a correct transcript for the record of proceedings in the above-titled matter.

s/Shirley Ann Hall
Shirley Ann Hall, RDR, CRR
Federal Official Court Reporter